**Andy LANG, d/b/a Lucky Star Restaurant, Petitioner,**

v.

**Abel Nieto LANDEROS, and the Workers' Compensation Court, Respondents.**

**No. 86044.**

Court of Appeals of Oklahoma, Division No. 1.

Jan. 30, 1996.

Rehearing Denied April 12, 1996.

Certiorari Denied June 5, 1996.

Valerie Dana, Dana Law Firm, P.C., Oklahoma City, for Petitioner.

Robert R. Robles, Oklahoma City, for Respondents.

## MEMORANDUM OPINION

GARRETT, Judge:

Respondent, Abel Nieto Landeros (Claimant) filed his Form 3 in the Workers' Compensation Court on June 10, 1994.[1] He alleged he injured his chest, both legs, right foot and low back while cooking. He alleged he slipped and fell while emptying boiling cooking oil and suffered burns, sprain and strain. In response, Petitioner, Andy Lang, d/b/a Lucky Star Restaurant (Employer), alleged Claimant is an illegal alien and is without standing to seek compensation. He also alleged Claimant gave a false social security number and was a minor who could not bring an action in his own name.[2] At the trial, Employer argued the Workers' Compensation Court had no jurisdiction because the employment was illegal; Claimant had no standing to file a claim because of his alien status; and Claimant was an independent contractor, not an employee.

On July 26, 1995, the court entered an order finding Claimant sustained an accidental personal injury on May 17, 1994, arising out of and in the course of his employment. The court awarded Claimant compensation for temporary total disability for the period of May 17, 1994 to September 1, 1994; 7% permanent partial disability to the body as a whole for injury to his low back; a lump sum of $7,000.00 for serious and permanent disfigurement to his chest, right foot, right leg and donor site on his left leg. The Court also made the following findings:

THAT claimant was an employee of respondent on May 17, 1994 and was not an independent contractor.

THAT claimant's status as an illegal alien does not limit the jurisdiction of this Court. That Oklahoma law does not exclude the claimant from receiving benefits.

For vacation of the award, Employer contends (1) Claimant's employment was illegal, precluding the court from making any award and he cannot establish a loss of earning capacity, a necessary prerequisite to benefits; and, (2) Claimant is an independent contractor.

The basis of Employer's first contention is that because Claimant entered the country illegally under federal immigration laws, any employment into which he enters in the United States is illegal. Employer has cited numerous federal cases and statutory references, none of which deal with the issue of workers' compensation laws.

▮▮▮ Workers' compensation did not exist under common law. Whether an award should be made, or denied, is purely statutory. *Earnest, Inc. v. LeGrand and Workers' Compensation Court,* 621 P.2d 1148, 1153 (Okl.1980). This Court may not legislate exceptions or exclusions. This is a matter to be addressed by the Legislature. Any employment is covered by the Workers' Compensation Act unless specifically excluded. *Nelson v. Bradshaw,* 791 P.2d 485 (Okl.App. 1990).

The definition of "employee", found at 85 O.S.Supp.1994 § 3(4), is:

any person engaged in the employment of any person, firm, limited liability company or corporation covered by the terms of the Workers' Compensation Act, and shall include workers associating themselves together under an agreement for the perfor-

---

1. The form 3 was returned on June 22, 1994, for additional information, and a second file stamp shows it was then filed on June 29, 1994.

2. By the time of the trial in this case, Claimant was 18 years old.

mance of a particular piece of work, in which event such persons so associating themselves together shall be deemed employees of the person having the work executed; provided, that if such employed worker, both the associated employees and the principal employer shall at once become subject to the provisions of the Workers' Compensation Act relating to independent contractors. . . .

Also defined under section 3, are "employer", under subsection 3, and "employment", under subsection 5:

> 3. "Employer", except when otherwise expressly stated, means a person, partnership, association, limited liability company, corporation, and the legal representatives of a deceased employer, or the receiver or trustee of a person, partnership, association, corporation, or limited liability company, departments, instrumentalities and institutions of this state and divisions thereof, counties and divisions thereof, public trusts, boards of education and incorporated cities or towns and divisions thereof, employing a person included within the term "employee" as herein defined;
> . . .
>
> 5. "Employment" includes work or labor in a trade, business, occupation or activity carried on by an employer or any authorized voluntary or uncompensated worker rendering services as a fire fighter, peace officer or civil defense worker; . . . .

■ Notably, the citizenship status of employees is not addressed in Oklahoma's statutes. The trial court correctly pointed out that there is no provision in the Oklahoma Act which precludes compensation for an employee who is an illegal alien. We see no error of law in this respect.

■ The next issue is whether there was a valid employer-employee relationship. The question of whether Claimant is an employee is a jurisdictional issue, subject to independent review by this Court. *Coleman v. J.C. Penney Co.* 848 P.2d 1158 (Okl.1993). No one factor controls in determination of the employer-employee relationship; it must be based on all of the facts particular to the case. See *Duncan v. Powers Imports,* 884 P.2d 854 (Okl.1994), citing *Coleman v. J.C. Penney Co.,* supra, and *Page v. Hardy,* 334 P.2d 782 (Okl.1958).[3]

Claimant testified, through an interpreter, he was hired to cook and wash dishes. He stated his "boss and the cook" told him what to do, and he was cooking at the time he was injured. He stated Lang did not give him a procedure for removing oil from the stove. He said he was told to cook chicken or whatever food was needed on the buffet line, and "the boss . . . a lady" told him that. He stated he was paid $950.00 per month, with no deductions, but he did not get paid if he did not show up for work.[4] He said Mr. Lang paid him in cash, but he did not ask to be paid in cash. He testified Lang, told him what to do, and he was expected to be there from 10:30 a.m. to 10:00 p.m., six days per week. He did not bring cleaning supplies from home, and he was not required to supply anything for doing his work. He testified it is not true that he did not apply for a social security number. However, he also stated the number he used is the one he uses in his work and that a friend of his gave it to him.

When questioned by Claimant's counsel, Lang testified he could tell Claimant to cook,

---

**3.** The eleven factors from *Page* to consider are: (1) the nature of the contract, whether written or oral; (2) the degree of control which, by the agreement, the employer may exercise on details of the work; (3) whether the one employed is engaged in a distinct occupation or business and whether he carries on such occupation or business for others; (4) the kind of occupation with regard to whether, in the locality, the work is usually done under an employer's direction or by a specialist without supervision; (5) the skill required in the particular occupation; (6) whether the employer or worker supplies the instrumentalities or tools needed for the job and the place of work for the worker; (7) the length of time for which the person is employed; (8) the method of payment, whether by the time or by the job; (9) whether or not the work is a part of the regular business of the employer; (10) whether the parties believe they are creating the relationship of master and servant; and (11) the right of either to terminate the relationship without liability. *Duncan v. Powers Imports,* citing *Page* at 784–85; *Coleman* at 1159.

**4.** Claimant also stated he received $225.00 every 15 days.

clean or to do whatever Lang needed him to do around the restaurant. He said he paid Claimant in cash and kept no record of what he paid him, although he said $950.00 per month was not correct. He said some weeks Claimant may only have worked 45 or 50 hours. He testified Claimant worked for him less than a year but more than six months, and he could tell him he was fired at any time. He said other people in the restaurant, i.e., "the cook or the fryer, your wife, anybody else", also had authority to tell him what to do. There is no testimony from Lang about whether he asked Claimant for his social security card or that he questioned whether Claimant fraudulently used a false number.

When questioned by his own counsel, on cross examination, Lang contradicted some of his earlier statements. He said Claimant was not a cook, but his job at the restaurant was dish washing and clean up. He said Claimant's salary was based on the job and received more money for more difficult jobs, although he had no idea what he paid him because he kept no records. When asked if Claimant had been an "employee of yours for more than a year", he said "Yes." He then stated that six months before the accident, Claimant "came in from the kitchen to the back room and said he needed a job." He stated he told him he may need him for clean up, and Claimant agreed. Lang said he did not consider Claimant a regular employee. He said removing the oil used for cooking chicken was not Claimant's job, but that the cook, Martin Savalone, was supposed to cook the chicken and remove the oil after it had cooled at least thirty minutes.

It is undisputed that there was an agreement for Claimant to work for Lang and that he was working for him when he was injured. It is also clear that both parties believed Lang was in charge of Claimant's work schedule; that Lang, as well as others, could control and supervise the work he did, which was generally cooking and cleaning; and that Lang could terminate the employment at any time. Lang's testimony that only Savalone was to do the cooking and removing of the oil appears to be in direct conflict with Claimant's testimony that he was told by a lady to cook the food needed for the buffet line. However, Claimant's statement is consistent with Lang's own testimony that any of the other employees, including his wife, could control the work Claimant did.

 We agree with the trial court that Claimant was an employee, and was not an independent contractor. The findings of the trial court are supported by the evidence and by Oklahoma's workers' compensation laws.

ORDER SUSTAINED.

JONES, P.J. and JOPLIN, J., concur.