882 A.2d 817

DESIGN KITCHEN AND BATHS, et al.

v.

Diego E. LAGOS.

No. 82, Sept. Term, 2003.

Court of Appeals of Maryland.

Sept. 12, 2005.

720

James R. Forrester (Anthony J. Zaccagnini of Semmes, Bowen & Semmes, P.C., on brief), Baltimore, for Appellants.

Luiz R.S. Simmons (Auerbach & Simmons, on brief), Silver Spring, for Appellee.

Joshua N. Auerbach, Murnaghan Appellate Advocacy Fellow, Baltimore; Marielena Hincapie, Nat. Immigration Center, Oakland, CA; Rebecca Smith, Amy Sugimori, Nat. Employment Law Project, Olympia, WA, brief of Amici Curiae Public Justice Center, Nat. Employment Law Project, and Nat. Immigration Center.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE JJ.

BELL, Chief Judge.

We granted certiorari in this case to decide the eligibility of an undocumented alien to receive workers' compensation pursuant to Maryland Code (1991, 1999 Repl. Vol.) Title 9 of the Labor and Employment Article, the Maryland Workers' Compensation Act ("the Act"), as a result of an injury sustained in the course of employment, which, except for the illegal resident status, would be compensable. The Maryland Workers' Compensation Commission ("the Commission") ruled that Diego E. Lagos, the appellee, although an undocumented alien, was an employee, as defined by § 9–202, who sustained a work related injury, for which he was eligible to receive workers' compensation benefits. The Circuit Court for Montgomery County, on judicial review, affirmed. This Court, on its own initiative and prior to review of the issue by the Court of Special Appeals, granted the petition filed by Design Kitchen

and Baths and its insurer, Princeton Insurance Co., the appellants, for a writ of certiorari. *Design Kitchen and Baths v. Lagos,* 378 Md. 176, 835 A.2d 1103 (2003). We shall affirm the judgment of the Circuit Court.

## I.

The appellee, while operating a saw in the employ of Design Kitchen and Baths, sustained an injury to his left hand, which required, in addition to other medical treatment, two surgical procedures to repair. As a result, he filed a claim for workers' compensation with the Commission. Aside from the issues of accidental injury, causal relationship, average weekly wage, and who was the responsible insurer, the Commission was required to address, at the insistence of the appellants, the appellee's eligibility, as an undocumented alien, to receive workers' compensation benefits. The parties agree that the facts surrounding the appellee's injury meet all the necessary requirements of a compensable injury under the Maryland Worker's Compensation Act and that, but for the appellee's undocumented/illegal resident status,[1] his claim would be compensable.

The Commission found in favor of the appellee. It held that the appellee suffered "an accidental injury arising out of and in the course of employment on August 20, 2001; and [found] that the disability of the claimant is the result of the aforesaid

1. Before the Commission, the appellee was instructed by his counsel not to respond to any questions regarding his resident status and social security number. Nevertheless, the appellee's counsel conceded that "he [the appellee] did not have a social security number" at the time he sustained the injury to his hand. This is important because:

"For an alien to be 'authorized' to work in the United States, he or she must possess 'a valid social security account number card,' § 1324a(b)(C)(i), or 'other documentation evidencing authorization of employment in the United States which the Attorney General finds, by regulation, to be acceptable for purposes of this section,' § 1324a(b)(C)(ii). See also § 1324a(h)(3)(B) (defining 'unauthorized alien' as any alien '[not] authorized to be so employed by this chapter or by the Attorney General')."

*Hoffman Plastic Compounds, Inc. v. N.L.R.B.* 535 U.S. 137, 148 n. 3, 122 S.Ct. 1275, 1282 n. 3, 152 L.Ed.2d 271, 281 n. 3 (2002).

accidental injury; and that as a result thereof the claimant was temporarily totally disabled from May 14, 2002 to June 17, 2002 inclusive."

The appellants filed a petition for judicial review in the Circuit Court for Montgomery County. They subsequently filed a motion for summary judgment, relying on the appellee's undocumented alien status and, specifically, his answer to interrogatories, in particular, Interrogatory No. 1, in which the appellee confirmed that he had no social security number. The appellee cross-moved for summary judgment. The Circuit Court denied the appellants' summary judgment motion and granted the appellee's cross-motion for summary judgment. It then remanded the case to the Commission. The appellants, in response, timely noted an appeal. As indicated, we granted certiorari on our own motion to consider what we discern to be the sole issue presented by this appeal, whether the appellee's undocumented worker status affects his eligibility to receive worker's compensation benefits under the Act.[2]

---

**2.** In their brief, the appellants presented three issues:

"A. In an appeal from the Workers' Compensation Commission, did the trial court err as a matter of law in granting summary judgment to the Claimant/Appellee on the issue of whether the Claimant, as an undocumented alien is entitled to benefits pursuant to the Maryland Workers' Compensation Act?

"B. In an appeal from the Workers' Compensation Commission, did the trial court err as a matter of law in granting summary judgment to the Claimant/Appellee on the issue of whether the Claimant, as an undocumented alien, is an 'employee' under the terms of the Maryland Workers' Compensation Act?

"C. In an appeal from the Workers' Compensation Commission, did the trial court err as a matter of law in granting summary judgment to the Claimant/Appellee on the issue of whether the Claimant, as an undocumented alien, is in direct conflict with federal immigration law and policy as set forth in the Immigration Reform and Control Act of 1986 and the United States Supreme Court holding in *Hoffman Plastic Compounds v. NLRB*, [535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271(2002)]?"

Although each of these questions approaches the issue from a different perspective and requires, for resolution, somewhat different analyses, the resolution of each directly addresses the issue we have identified, "whether the appellee's undocumented worker status affects his eligibility to receive worker's compensation benefits under the Act."

## II.

The appellants contend that the appellee's status as an undocumented/illegal alien prohibits his legal employment, thus precluding his being, or being able to prove that he is, a "covered employee." More particularly, they argue that, inasmuch as the appellee is prohibited by his undocumented/illegal alien status from entering into an employment contract and, in any event, "any alleged contract of employment is void as it is in direct conflict with the Immigration Reform and Control Act of 1986," his claim for workers' compensation benefits must be denied. This result is mandated, they submit, by "the absence of an employment contract"—"[w]ithout a social security number, there can be no legal contract for hire"—and the lack of current case law and immigration policy favorable to the appellee's position.

■ It is critical to the appellants' argument that § 9–202 does not expressly address the effect undocumented/illegal alien status and/or illegal employment for other than minors has on "covered employee" status. Of equal significance to their argument is the clarity of § ˙9–202; because it is a provision of the Workers' Compensation Act, a remedial statute, it is subject to the rule that, "[the Act] should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant," *Harris v. Board of Education of Howard County*, 375 Md. 21, 57, 825 A.2d 365, 387 (2003); *Podgurski v. OneBeacon Ins. Co.*, 374 Md. 133, 142, 821 A.2d 400, 406 (2003) (citing *Watson v. Grimm*, 200 Md. 461, 472, 90 A.2d 180, 185 (1952)); *Mayor & City Council of Baltimore v. Cassidy*, 338 Md. 88, 97, 656 A.2d 757, 761–762 (1995) (quoting *Victor v. Proctor & Gamble Mfg. Co.*, 318 Md. 624, 629, 569 A.2d 697, 700 (1990)); *Lovellette v. Mayor & City Council of Baltimore*, 297 Md. 271, 282, 465 A.2d 1141, 1147 (1983), and thus interpretation of its provisions may depend upon whether its terms are clear or ambiguous. As to the latter point, the appellants maintain that, rather than ambiguous or unclear,

§ 9–202 is simply silent on the issue of the effect of undocumented/illegal alien status or illegal employment on eligibility for workers' compensation benefits. Consequently, they assert, liberal interpretation of § 9–202, in that regard, is neither required nor permitted.

■ Also essential to the appellants' argument is the Immigration Reform and Control Act ("IRCA"), 8 U.S.C.A. § 1324, and its interpretation by the Supreme Court in *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board,* 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002). Characterized by the Supreme Court as "a comprehensive scheme," *Hoffman Plastic Compounds,* 535 U.S. at 147, 122 S.Ct. at 1282, 152 L.Ed.2d at 281, by its enactment of the IRCA, Congress declared that "it is unlawful for a person or other entity to hire, or to recruit or refer for a fee, for employment in the United States an alien knowing the alien is an unauthorized alien [3] with respect to such employment." 8 U.S.C. § 1324a (1)(a).

Emphasizing the reasoning of the Supreme Court in *Hoffman Plastic Compounds,* that the award of backpay to an illegal alien, who legally could not have earned the wages upon which the backpay is based, who fraudulently obtained the job in the first place and whose qualification to receive it depended on his remaining in the country illegally, "trivialize[s] the immigration laws, it also condones and encourages future violations," *id.* at 150, 122 S.Ct. at 1284, 152 L.Ed.2d at 283,

---

3. An "unauthorized alien" is one who is "not lawfully present in the United States" or is "not lawfully authorized to work in the United States." *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board,* 535 U.S. 137, 147, 122 S.Ct. 1275, 1282, 152 L.Ed.2d 271, 281 (2002), citing 8 U.S.C. § 1324 a(h)(3). *See Rios v. Ryan Inc. Central,* 35 Va.App. 40, 47, 542 S.E.3d 790, 793 (2001) (quoting 8 U.S.C. § 1324 a(h)(3) (1994) (defining unauthorized alien as one who, at the time of employment, is not either: "(A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney General.")). *See also The Reinforced Earth Co. v. Workers' Compensation Appeal Board,* 570 Pa. 464, 468 n. 3, 810 A.2d 99, 101 n. 3 (2002).

the appellants analogize that case to this one.[4] They reason:

"Regardless of whether it was the Claimant or the Employer who violated the IRCA, it is the Claimant that seeks indemnity and medical benefits for wages he could not have legally earned at a job, which was borne of a fraudulent act. The Supreme Court made no distinction as to who circumvented the IRCA, only that the undocumented alien was not eligible for backpay as a result of his undocumented status."

The appellants rely heavily on the Virginia experience, as well. They point out that the Virginia Supreme Court, presented with the identical issue with which this case presents this Court, under a similar factual pattern, construed § 65.2–101 of the Virginia Workers' Compensation Act,[5] the Virginia analog to § 9–202, in conjunction with the IRCA, concluding that the claimant, an illegal alien, was not an "employee" under the Virginia Act. *Granados v. Windson Development Corp.*, 257 Va. 103, 108–109, 509 S.E.2d 290, 293 (1999). The court explained:

"Granados was not in the service of Windson under any contract of hire because, under the Immigration Reform and Control Act of 1986, an illegal alien cannot be employed lawfully in the United States. *See* 8 U.S.C. § 1324a; *see*

---

4. We want to make it clear that this case is in no way analogous to *Hoffman Plastic Compounds*. They differ in at least three significant respects: (1) the appellant in *Hoffman Plastic Compounds* was unlawfully terminated for his participation in a union organizing campaign, unlike in the instant case where the appellee sought workers' compensation benefits after he was injured in the course of performing his employment duties; (2) the appellee in the instant case actually performed his duties and was in the process of performing them when he was injured, while the appellant in *Hoffman Plastic Compounds* sought, and was awarded, back pay for being wrongfully discharged; and (3) the appellant in *Hoffman Plastic Compounds* produced fraudulent documents to establish his legal authority to work in the United States, while the appellee in the instant case simply left the space for his social security number blank on his employment application.

5. Section 65.2–101 of the Virginia Workers' Compensation Act, in material part, defined an "[e]mployee" as "[e]very person, including a minor, in the service of another under any contract of hire."

*also* Code § 40.1–11.1.[6] Therefore, Granados was not eligible to receive compensation benefits as an 'employee' under the Act because his purported contract of hire was void and unenforceable."

*Id.*

Subsequent to the *Granados* case, and in response to it, the Virginia Legislature amended § 65.2–101 to broaden the definition of "employee." That statute now provides, as relevant, that an "employee" is "[e]very person, *including aliens* and minors, in the service of another under any contract of hire or apprenticeship, written or implied, *whether lawfully or unlawfully employed.*" (Emphasis added). *See Rios v. Ryan,* 35 Va.App. 40, 542 S.E.2d 790, 792 (2001) What the appellants find significant about the Virginia experience, and persuasive, as well, is that the original statute was silent as to the issue of undocumented/illegal aliens. It was an act of the Virginia Legislature, not the Commonwealth's appellate courts, that amended the statutory definition of "employee."

## III

The definition of "covered employee" is set forth in Md. Code (1991, 1999 Repl.Vol.), § 9–202 of the Labor and Employment Article. It is:

"(a) *In general.*—Except as otherwise provided, an individual, including a minor, is a covered employee while in the service of an employer under an express or implied contract of apprenticeship or hire.

---

6. Va.Code Ann. §§ 40.1–11.1 provided, as pertinent:

 "It shall be unlawful and constitute a Class 1 misdemeanor for any employer or any person acting as an agent for an employer, or any person who, for a fee, refers an alien who cannot provide documents indicating that he or she is legally eligible for employment in the United States for employment to an employer, or an officer, agent or representative of a labor organization to knowingly employ, continue to employ, or refer for employment any alien who cannot provide documents indicating that he or she is legally eligible for employment in the United States."

"(b) *Unlawful employment—Minors.*—A minor may be a covered employee under this section even if the minor is employed unlawfully."

Pursuant to subsection (a), an employee must meet two conditions to qualify as a "covered employee," he or she must: (1) be "in the service of an employer"; and (2) that service must be in connection with "an express or implied contract of apprenticeship or hire." Subsection (b) makes express, as to minors, what subsection (a) does not explicitly address with respect to other employees, that unlawful employment of a minor does not preclude the minor from being a "covered employee."

 We are presented with an issue of statutory interpretation. The goal with which we approach the interpretation of a statute is to determine the intention of the Legislature in enacting it. *Mayor and City Council of Baltimore v. Chase,* 360 Md. 121, 128, 756 A.2d 987, 991 (2000). Indeed, "ascertain[ing] and carry[ing] out the real intention of the Legislature," is the cardinal rule of statutory construction, *Mazor v. Dep't of Correction,* 279 Md. 355, 360, 369 A.2d 82, 86 (1977) citing *State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275, 278 (1975); *Fairchild v. Maritime Air Serv.,* 274 Md. 181, 185, 333 A.2d 313, 315–16 (1975); *Purifoy v. Merc.-Safe Dep. & Trust,* 273 Md. 58, 65, 327 A.2d 483, 487 (1974), and it is to that canon that we turn first. In examining a statute we give words their ordinary and natural meaning. *Chase,* 360 Md. at 128, 756 A.2d at 991, citing *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995); *Montgomery County v. Buckman,* 333 Md. 516, 523, 636 A.2d 448, 451 (1994); *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753, 755 (1993); *Harris v. State,* 331 Md. 137, 145–146, 626 A.2d 946, 950 (1993). Moreover, we read the statute so that "no word, phrase, clause or sentence is rendered surplusage or meaningless." *Buckman,* 333 Md. at 524, 636 A.2d at 452; *Condon,* 332 Md. at 491, 632 A.2d at 755; *Prince George's Co. v. White,* 275 Md. 314, 319, 340 A.2d 236, 240 (1975). "Where the words of a statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning," the Court will

give effect to the statute as the language is written. *Moore v. Miley,* 372 Md. 663, 677, 814 A.2d 557, 566 (2003). Thus, when the statutory language is plain and unambiguous, a court may neither add nor delete language so as to "reflect an intent not evidenced in that language," *Condon, supra,* 332 Md. at 491, 632 A.2d at 758, nor may it construe the statute with " 'forced or subtle interpretations' that limit or extend its application." *Id.* (quoting *Tucker v. Fireman's Fund Insurance Co.,* 308 Md. 69, 73, 517 A.2d 730, 732 (1986)).

 Both parties agree that § 9–202 is not ambiguous.[7] We also agree. Moreover, we have no doubt that the clear

---

**7.** The appellants maintain that the fact that § 9–202 does not expressly mention aliens and, with respect to individuals other than minors, the lawfulness of the employment simply means that it is silent on these points; it does not render the statute ambiguous, thus triggering the liberal interpretation that we have held applies to remedial statutes. We are not persuaded. Statutes do not often mention every one, or category, of the subjects to which they apply. Nevertheless, we regularly interpret those statutes and apply them, when appropriate to whatever object they are determined to relate. As the Amici, Public Justice Center, National Employment Law Project and National Immigration Law Center, point out:

"The statute is 'silent' on this question to precisely the same extent that it is 'silent' on the question of whether, for example, women, or individuals who are left-handed, can qualify as 'covered employees'— that is to say, not at all. Undocumented immigrants, women, and left-handed people are all 'covered employees' if they are 'in the service of an employer under an express or implied contract of apprenticeship or hire.' "

In any event, a statute's failure to address an issue logically covered by its subject or with which it was promulgated to deal is not mere silence, evoking no interpretive ramifications. Because the application of the statute to the omitted issue is pertinent, if not critical, to its meaning, the silence, the failure to address the issue, may itself be an ambiguity and, where appropriate, does, and should, trigger the liberal interpretation rule applicable to remedial statutes. *See Pak v. Hoang,* 378 Md. 315, 328, 835 A.2d 1185, 1192–1193 (2003), in which we determined that the Maryland Security Deposit Act, Md. Code (1974, 2003 Repl.Vol.), § 8–203 of the Real Property Article was a remedial statute and applied liberal construction to resolve, favorably to the tenants, the parties for whom the statute was remedial, the question of whether "reasonable attorney's fees," for which the statute provided, included post-judgment attorney's fees, a matter that the statute simply did not address.

and unambiguous language of § 9–202 encompasses undocumented aliens. The statute plainly and simply states that, "[e]xcept as otherwise provided," a "covered employee" is characterized by two elements: he or she, pursuant to "an express or implied contract of apprenticeship or hire" is "in the service of an employer." When the plain language of the statute is applied to the factual circumstances *sub judice,* without giving it a liberal interpretation in favor of the appellee, the appellee nevertheless clearly qualifies on both accounts.

The legislative history of § 9–202 confirms this interpretation. *See Chase,* 360 Md. at 131, 756 A.2d at 993 (when the language of a statute is unambiguous, "the resort to legislative history is a confirmatory process; it is not undertaken to contradict the plain meaning of the statute"). *See Coleman v. State,* 281 Md. 538, 546, 380 A.2d 49, 54 (1977) ("[a] court may not as a general rule surmise a legislative intention contrary to the plain language of a statute or insert exceptions not made by Legislature"). Before its repeal and re-enactment as a new section, § 21 provided for the payment of compensation "for injuries sustained or death incurred by employees engaged in ... extra-hazardous employments," which it then enumerated in approximately 50 succeeding paragraphs. Md. Code (1957, 1964 Replacement Volume) Art. 101, § 21. After the repeal and re-enactment of that provision, *see* 1970 Md. Laws ch. 741, the Act contained a provision expressly defining "covered employee" as:

"Every person, including a person under eighteen years of age, *whether lawfully or unlawfully employed,* in the service of an employer under any contract of hire or apprenticeship, express or implied, and all helpers and assistants of employees whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employee."

(Emphasis added). It was codified at Md. Code (1957, 1964 Replacement Volume, 1971 Cum. Supp.), Article 101,

§ 21(b)(1).[8] It remained so codified until 1991, when, pursuant to Code Revision, the General Assembly repealed Article 101 and, to replace it, enacted the Labor and Employment Article. 1991 Md. Laws ch. 8. Section 9–202 is the successor provision to § 21(b)(1). As we have seen, it is styled differently, having two subsections, rather than one, and some of the language, most notably, for our purposes, the phrase, "whether lawfully or unlawfully employed," have been changed from that used in § 21(b)(1). A Revisor's Note detailing the changes and their effect, placed following § 9–202, is instructive. It explained:

"REVISOR'S NOTE: This section is new language derived without substantive change from former Art. 101, § 21(b)(1), as that item related to individuals in the service of an employer under a contract of hire.

"The word 'minor' is substituted for the former phrase "person under eighteen years of age", for brevity. *See* Art. 1, § 24 of the Code.

"In subsection (a) of this section, the word 'individual' is substituted for the former word 'person', since this title covers only a human being. As to the definition of 'person', *see* § 1–101 of this article.

"The provisions of former Art. 101, § 21(b)(4) that related to an individual in the service of a political subdivision are deleted as unnecessary in light of the broader reference to an individual in the service of an employer."

While the Revisor's Note does not highlight or explain expressly the deletion of the phrase, "whether lawfully or unlawfully employed," we do know from the Note that the revisions were intended to be "without substantive change." That is confirmed by the Report of the Department of Legislative Reference. Department of Legislative Reference, *Report*

---

**8.** In the 1970 Cumulative Supplement to the 1964 Replacement Volume, an Editor's Note acknowledged the passage, during the 1970 Legislative Session, of H.B. 729, later to become Chapter 741 of the Acts of 1970, but indicated that the bill had not been signed when the supplement was prepared.

*on House Bill 1* at 1 (January 14, 1991). That Report characterized the purpose of the revisions as being the "improvement of organization, elimination of obsolete or unconstitutional provisions, resolution of inconsistencies and conflicts in the law, correction of unintended gaps or omissions in the law, deletion of repetitive or otherwise superfluous language, and general improvement of language and expression." Because revisions that were substantive and policy issues were highlighted for the General Assembly and the deleted phrase was not the subject of any such highlighting, it safely may be assumed that "whether lawfully or unlawfully employed" was deleted as repetitive or surplusage. We agree with amici, therefore, that the Legislature, more than thirty (30) years ago, by enacting legislation that included the phrase, "whether lawfully or unlawfully employed," manifested an intention that even unlawfully employed workers be "covered employees" in the workers' compensation system. That intention thirty odd years later retains its vitality; a revision made without substantive change, in no way can be construed as evidencing an intention to exclude *any party* to a contractual relationship, "whether lawfully or unlawfully employed, from being eligible to receive workers' compensation."

This result is consistent with, and indeed furthers, the purpose of the Workers' Compensation Act, to "protect[ ] employees, employers, and the public alike." *Polomski v. Mayor & City Council of Baltimore,* 344 Md. 70, 76, 684 A.2d 1338, 1341 (1996). As we explained in *Polomski,*

"To be sure, the Act maintains a no-fault compensation system for employees and their families for work-related injuries where compensation for lost earning capacity is otherwise unavailable. *See Bethlehem–Sparrows Point Shipyard v. Damasiewicz,* 187 Md. 474, 480, 50 A.2d 799, 802 (1947); *Paul v. Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544, 546 (1944). At the same time, however, the Act also recognizes the need to protect employers from the unpredictable nature and expense of litigation, and the public from the overwhelming tax burden of 'caring for the helpless human wreckage found [along] the trail of modern

industry.' *Liggett & Meyers Tobacco Company v. Goslin,* 163 Md. 74, 80, 160 A. 804, 807, (1932); *Brenner v. Brenner,* 127 Md. 189, 192, 96 A. 287, 288 (1915)."

*Id.* at 76–77, 684 A.2d at 1341. For these same reasons, public policy also favors the inclusion of undocumented workers as "covered employees" under the statute. Exclusion of this class of persons from the statute's coverage would retard the goals of workers' compensation laws and leave these individuals with only two options, receive no relief for work related injuries or sue in tort. Moreover, without the protection of the statute, unscrupulous employers could, and perhaps would, take advantage of this class of persons and engage in unsafe practices with no fear of retribution, secure in the knowledge that society would have to bear the cost of caring for these injured workers.

The majority of courts in states with statutes similar to ours that have considered the issue have reached the same result. In *Dowling v. Slotnik,* 244 Conn. 781, 712 A.2d 396, 407–409 (1998), the Supreme Court of Connecticut construed its statute, defining "employee," in relevant part, as "any person who ... [h]as entered into or works under any contract of service ... with an employer ...," [9] to include undocumented workers within the group of workers able to invoke the remedy provided by that State's Workers' Compensation Act. Similarly, the Superior Court of New Jersey has held that "employee," as defined in its Workers' Compensation Act, "is synonymous with servant, and includes all natural persons ... who perform service for an employer for financial consideration ...," N.J.S.A. 34:15–36, and includes undocumented workers. The court reasoned, "unless undocumented aliens, like longshoremen or 'casual employees,' are expressly excluded, they self-evidently fall within the statutory definition." *Fernandez–Lopez v. Jose Cervino, Inc.,* 288 N.J.Super. 14, 671 A.2d 1051, 1053 (App.Div.1996). *See Artiga v. M.A. Patout and Son,* 671 So.2d 1138, 1139 (La.App.1996) (holding that LA.R.S. 23:1035(A), making the provisions of the Workers'

9. Connecticut General Statutes § 31-275(9)(A)(1).

Compensation Act "appl[icable] to every person performing services arising out of and incidental to his employment in the course of his own trade, business, or occupation, or in the course of his employer's trade, business, or occupation," included undocumented workers); *Lang v. Landeros*, 918 P.2d 404, 405–406 (Okla.App. 1996) (interpreting Oklahoma's workers' compensation statute, which, in relevant part, defined "employee" to mean "any person engaged in the employment of any person, firm, limited liability company or corporation covered by the terms of the Workers' Compensation Act"); *Reinforced Earth Co. v. W.C.A.B. (Astudillo)*, 749 A.2d 1036, 1038 (Pa.Cmwlth.2000), *aff'd* 570 Pa. 464, 810 A.2d 99 (2002) (" 'Employee' as defined by the Act [10] includes any natural person who performs services for another for a valuable consideration. . . . The only individuals that the Act specifically excludes are persons whose employment is casual in nature and those considered independent contractors from the definition of an employee entitled to benefits.").

So, too, have courts that have interpreted statutes that expressly include aliens, but do not distinguish between illegal and legal aliens. *See Correa v. Waymouth Farms, Inc.*, 664 N.W.2d 324, 329 (Minn.2003); *Sanchez v. Eagle Alloy Inc.*, 254 Mich.App. 651, 658 N.W.2d 510, 516 (2003). As do those courts whose statutes expressly cover aliens, "whether lawfully or unlawfully employed." *See Del Taco v. Workers' Comp. Appeals Bd.*, 79 Cal.App.4th 1437, 1441, 94 Cal.Rptr.2d 825, 828 (2000), *Champion Auto Body v. Industrial Claim Appeals Office*, 950 P.2d 671, 673 (Colo.App.1997), *Safeharbor Employ-*

---

10. The applicable statute, 77 P.S. § 22, as pertinent, provided:

"The term 'employe,' as used in this act is declared to be synonymous with servant, and includes—

"All natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer, and exclusive of persons to who articles or materials are given out to be made up, cleaned, washed, altered, ornamented, finished or repaired, or adapted for sale in the worker's own home, or on other premises, not under the control or manager of the employer[.]"

*er Servs. I, Inc. v. Cinto Velazquez*, 860 So.2d 984, 985–86 (Fla.App.2003); *Rivera v. Trapp*, 135 N.C.App. 296, 519 S.E.2d 777, 781 (1999).

With the exception of the Supreme Court of Virginia, *see Granados*, 257 Va. 103, 509 S.E.2d 290, whose decision, we have seen, was overruled by the Virginia Legislature, see *Rios v. Ryan*, 35 Va.App. 40, 542 S.E.2d 790, only one court, the Wyoming Supreme Court, has construed its Workers' Compensation Act as excluding undocumented workers. *Felix v. State ex rel., Wyoming Workers' Safety and Compensation Div.*, 986 P.2d 161 (Wyo.1999). That court's interpretation is understandable, moreover, because the statute defined "employee" in terms of "legally employed minors and aliens authorized to work by the United States department of justice, immigration and naturalization service." Thus, the court reasoned, applying canons of statutory interpretation:

> "Wyo. Stat. Ann. §§ 27–14–102(a)(vii) expressly lists *"aliens authorized to work by the United States department of justice, immigration and naturalization service "* as "employees" who may be covered by workers' compensation. This specific phrase is meaningless if all aliens are considered "employees" whether authorized to work in this country or not. If the legislature intended that all employed aliens be covered by workers' compensation it would not have precisely stated that aliens authorized to work here are considered employees. To give effect to all the language in the statute, we conclude that an alien not authorized to work in the United States is not an "employee" under §§ 27–14–102(a)(vii)."

*Felix*, 986 P.2d at 164.

■ The arguments advanced by the appellants, namely, that undocumented/illegal alien status prohibits legal employment and, thus, precludes one in that status from being, or being able to prove that he or she is, a covered employee and, in effect, that *Hoffman Plastic Compounds, supra*, 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271, makes clear that the IRCA preempts State workers' compensation acts or, at the

least, precludes an award of workers' compensation benefits to an undocumented worker, as contradictory of the IRCA and that decision, have been rejected by the courts that have considered them.

The Court in *Hoffman Plastic Compounds* addressed the application of the IRCA to undocumented workers. There, the employer had terminated its employee, later determined to have been an illegal alien, for engaging in pro-union activities. Discharge of a worker for that reason was unlawful. For that reason and despite his illegal alien status, the National Labor Relations Board ("the NLRB") awarded the discharged employee backpay for the employer's wrongful termination. *Id.* at 140–41, 122 S.Ct. at 1278–79, 152 L.Ed.2d at 276–77. The Supreme Court reversed, concluding that Congress would not have intended that backpay be paid to an employee "where but for an employer's unfair labor practices, an alien-employee would have remained in the United States illegally, and continued to work illegally, all the while successfully evading apprehension by immigration authorities." *Id.* at 149, 122 S.Ct. at 1283, 152 L.Ed.2d at 282. In fact, the Court stated its view that "award[ing] backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration, as expressed in the IRCA." *Id.* at 151, 122 S.Ct. at 1284, 152 L.Ed.2d at 283–284.

As previously indicated, *supra,* the *Hoffman Plastic Compounds* Court acknowledged the comprehensiveness of the IRCA regime, the scheme Congress adopted to "prohibit[ ] the employment of illegal aliens in the United States." *Hoffman Plastic Compounds,* 535 U.S. at 147, 122 S.Ct. at 1282, 152 L.Ed.2d at 281. It also recognized that under that regime, "it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening explicit congressional policies. Either the undocumented alien tenders fraudulent identification, which subverts the cornerstone of IRCA's enforcement mechanism, or the employer knowingly hires the undocumented alien in direct contradiction of its IRCA obligations." Id. at 148–49, 122 S.Ct. at

1283, 152 L.Ed.2d at 282. With that backdrop, the Court offered a rationale for its conclusions:

"As we have previously noted, IRCA 'forcefully' made combating the employment of illegal aliens central to '[t]he policy of immigration law.' *INS v. National Center for Immigrants' Rights, Inc.,* 502 U.S. 183, 194, and n. 8, 112 S.Ct. 551, 116 L.Ed.2d 546 (1991). It did so by establishing an extensive 'employment verification system,' § 1324a(a)(1), designed to deny employment to aliens who (a) are not lawfully present in the United States, or (b) are not lawfully authorized to work in the United States, § 1324a(h)(3).... This verification system is critical to the IRCA regime. To enforce it, IRCA mandates that employers verify the identity and eligibility of all new hires by examining specified documents before they begin work. § 1324a(b). If an alien applicant is unable to present the required documentation, the unauthorized alien cannot be hired. § 1324a(a)(1).

"Similarly, if an employer unknowingly hires an unauthorized alien, or if the alien becomes unauthorized while employed, the employer is compelled to discharge the worker upon discovery of the worker's undocumented status. § 1324a(a)(2). Employers who violate IRCA are punished by civil fines, § 1324a(e)(4)(A), and may be subject to criminal prosecution, § 1324a(f)(1). IRCA also makes it a crime for an unauthorized alien to subvert the employer verification system by tendering fraudulent documents. § 1324c(a). It thus prohibits aliens from using or attempting to use 'any forged, counterfeit, altered, or falsely made document' or 'any document lawfully issued to or with respect to a person other than the possessor' for purposes of obtaining employment in the United States. §§ 1324c(a)(1)–(3). Aliens who use or attempt to use such documents are subject to fines and criminal prosecution. 18 U.S.C. § 1546(b)."

*Id.* at 147–48, 122 S.Ct. at 1282–83, 152 L.Ed.2d at 281–82. This rationale has provided the foundation for arguments by employers that undocumented/illegal workers are ineligible for workers' compensation benefits because such benefits are pre-

empted or because employment contracts with such workers are illegal.

Before the Connecticut Supreme Court in *Dowling* were two arguments advanced by the employer/respondent, directly raising preemption. The employer argued that (1) because it requires an employer to make payments to the undocumented worker, a workers' compensation award constitutes a "civil sanction" against the employer, which is preempted by the IRCA, § 1324(a)(h)(2) and (2) an award of workers' compensation is impliedly preempted by the IRCA because it contravenes the purpose of the IRCA. The court rejected both arguments.

With respect to direct preemption, it concluded:

"Section 1324a(h)(2), the express preemption provision of the Immigration Reform Act, only prohibits that states from imposing civil *sanctions* upon those who employ undocumented aliens. Because workers' compensation benefits are designed [ ]'to *compensate the worker for injuries* arising out of and in the course of employment, *without regard to fault,* by imposing a form of strict liability on the employer'[ ]; (emphasis added) *Panaro v. Electrolux Corp.,* 208 Conn. 589, 598–99, 545 A.2d 1086 (1988); *Jett v. Dunlap,* 179 Conn. 215, 217, 425 A.2d 1263 (1979); an award of such benefits reasonably cannot be described as a 'sanction.'"

712 A.2d at 403. As to the implied preemption argument, it opined:

"The primary purpose of the Immigration Reform Act was to establish procedures that make it more difficult to employ undocumented workers and to punish employers who knowingly offer jobs to those workers. *National Labor Relations Board v. A.P.R.A. Fuel Oil Buyers Group, Inc., supra,* 134 F.3d [50] at 55–56; see *United States v. Todd Corp.,* 900 F.2d 164, 165 (9th Cir.1990). The Immigration Reform Act itself gives no indication that Congress intended the act to preempt state laws whenever state laws operate to benefit undocumented aliens. Indeed, ['] it is clear from [the] legislative history [of the Immigration reform Act] that

Congress anticipated some conflict between the new statute and various state . . . statutes."

712 A.2d at 404.

Other courts have reached similar results on the preemption/preclusion issue. *See Correa v. Waymouth Farms, Inc.,* 664 N.W.2d 324, 329 (Minn.2003) ("As written, the IRCA does not prohibit unauthorized aliens from receiving state workers' compensation benefits. . . . Thus, we conclude that the IRCA was not intended to preclude the authority of states to award workers' compensation benefits to unauthorized aliens."); *Safeharbor Employer Servs. I, Inc. v. Cinto Velazquez,* 860 So.2d 984, 986 ("IRCA does not contain express preemption language nor does it so thoroughly occupy the field as to require a reasonable inference that Congress left no room for states to act. Further, since *Hoffman* found benefits other than backpay to be applicable to illegal aliens, there is no conflict between state and federal law in this case."); *Reinforced Earth Co. v. W.C.A.B. (Astudillo),* 749 A.2d 1036, 1038 ("the IRCA does not, in and of itself, preclude an illegal alien from being considered an 'employee' for purposes of the Act."); *Ruiz v. Belk Masonry Co., Inc.,* 148 N.C.App. 675, 559 S.E.2d 249, 252 (2002) ("we hold that federal law prohibiting the hiring of illegal aliens does not prevent illegal aliens from being included in the North Carolina Workers' Compensation definition of 'employee,' nor does federal law prevent illegal aliens, based solely on immigration status, from receiving workers' compensation benefits.").

The *Dowling* court also rejected the appellants' "disability" argument, stating emphatically, "[a]lthough we agree with the respondents that 'under the [Workers' Compensation A]ct . . . coverage must arise from a contract of employment, either express or implied'. . . we do not agree that an employment agreement between an employer and an illegal alien is so tainted by illegality that, as a matter of law, the agreement cannot constitute a 'contract of service.'" 712 A.2d at 409 (citations omitted). Although noting its superficial appeal, the court in *Fernandez–Lopez v. Cervino,* 671 A.2d at 1053, also rejected the argument advanced by the employer: "If [peti-

tioner] is an illegal alien, it is against Federal law for him to be in the United States and work here. Therefore, it appears that his contract of employment must be illegal." *See also Champion Auto Body v. Industrial Claim Appeals Office,* 950 P.2d 671, 672–73 (rejecting argument that, "because the claimant was an undocumented alien, employers were precluded from hiring him pursuant to the provisions of the Immigration Reform and Control Act of 1986 (IRCA).... Therefore, ... the claimant was under a 'legal disability' which prevented him from working and which precluded him, as a matter of law, from proving any wage loss for purposes of showing entitlement to temporary partial disability benefits"); *Lang v.Landeros,* 918 P.2d at 405 (same).

We hold that an undocumented worker injured in the course of his employment is a "covered employee" under § 9–202 and, therefore, is eligible to receive worker's compensation benefits.

JUDGMENT AFFIRMED, WITH COSTS.

Dissenting Opinion by HARRELL, J.

HARRELL, Judge, dissenting.

The Majority opinion, after construing the language and legislative history of § 9–202 of the Labor and Employment Article, holds that appellee's undocumented worker status is no bar to his receipt of workers' compensation benefits under the Act. Maj. op. at 730, 882 A.2d at 824. I reach the opposite conclusion.

Section 9–202 of the Labor and Employment Article, the key statutory provision at issue here, provides that the definition of a "covered employee" is:

(a) In general.—Except as otherwise provided, an individual, including a minor, is a covered employee while in the service of an employer under an express or implied contract of apprenticeship or hire.

(b) Unlawful employment—Minors.—A minor may be a covered employee under this section even if the minor is employed unlawfully.

Maryland Code (1991, 1999 Repl.Vol.), Labor and Employment Article, § 9–202.[1]

The Majority opinion appropriately recites the primary canon of statutory construction: the Court will ascertain and carry out the real intention of the Legislature. Maj. op. at 728, 882 A.2d at 823. In doing so, the Court will "read the statute so that 'no word, phrase, clause or sentence is rendered surplusage or meaningless.'" Maj. op. at 728, 882 A.2d at 823 (citations omitted). If the statute's words are plain and unambiguous, then the Court "will give effect to the statute as the language is written" and will refrain from adding or deleting language to "'reflect an intent not evidenced in that language.'" Maj. op. at 729, 882 A.2d at 823 (citations omitted).

Yet, the Majority neglects to abide by these statutory construction principles in application to the present case. The Majority opinion declares that § 9–202 "plainly and simply states that, '[e]xcept as otherwise provided,' a 'covered employee' is characterized by two elements: [1] he or she, pursuant to 'an express or implied contract of apprenticeship or hire' [2] is 'in the service of an employer.'" Maj. op. at 730, 882 A.2d at 824 (citations omitted). That summation, however, describes only the content of sub-section (a) of the statute. Section 9–202 is made up of *two* sub-sections. The Majority opinion ignores the second sub-section in its analysis. Doing so renders sub-section (b) superfluous and nugatory.

Section 9–202(b) provides that minors are covered employees even if unlawfully employed. Although neither § 9–202(a) nor (b) expressly states that an adult, in order to be considered a covered employee, is subject to a lawful employment requirement, it is implied not only by the language and structural position of § 9–202(b), but also by its mere existence. The Majority's construction, in effect, revises the plain language of § 9–202(b), as well as the structure of § 9–202, to state that both minors and adults may be covered employees

---

1. Unless otherwise provided, all statutory references are to sections within Maryland's Workers' Compensation Act, codified at Maryland Code (1991, 1999 Repl.Vol.) Labor and Employment Article, § 9–202.

even if employed unlawfully. By ignoring § 9–202(b), the Majority creates an interpretation reflecting an intent not evidenced by the Legislature's chosen language, construing it with a forced interpretation that hyper-extends its plain meaning. The plain meaning of the language of the full statute prevents me from joining the Majority opinion.

Furthermore, the Majority's use of legislative history here is inconsistent with established principles of statutory construction normally applied by the Court. After finding the statute to be unambiguous, the Majority reflects upon the legislative history of § 9–202 as part of a claimed "confirmatory process." Maj. op. at 730, 882 A.2d at 824 (citations omitted). Here it appears that the Majority is using legislative history to justify its tacit disregard of § 9–202(b).

We have quite recently and frequently abided by the canon that:

> [i]f there is no ambiguity in [the statute's] language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for "the Legislature is presumed to have meant what it said and said what it meant."

*Kushell, IV v. Dept. of Natural Res.*, 385 Md. 563, 577, 870 A.2d 186, 193–94 (2005) (quoting *Arundel Corp. v. Marie,* 383 Md. 489, 502, 860 A.2d 886, 894 (2004)); *see also Smack v. Dept. of Health and Mental Hygiene,* 378 Md. 298, 304–05, 835 A.2d 1175, 1178–79 (2003); *Maryland Div. of Labor and Industry v. Triangle Gen. Contractors,* 366 Md. 407, 421–22, 784 A.2d 534, 542 (2001); *Chesapeake Amusements Inc. v. Riddle,* 363 Md. 16, 28, 766 A.2d 1036, 1042 (2001); *Abramson v. Montgomery County,* 328 Md. 721, 736–37, 616 A.2d 894, 901–02 (1992).

For instance, in *Triangle General Contractors,* the Court interpreted the meaning of a provision of the Maryland Prevailing Wage Act, after recodification, finding its language to be clear and unambiguous and affecting a substantive change in the statute as it existed before recodification. *Triangle*

*Gen. Contractors,* 366 Md. at 422, 784 A.2d at 542. Though we considered the Revisor's Note to the recodification, which stated that no substantive change from the former version of the provision was intended, we were not blinded to the plain meaning of the current version of the statute, refusing to "express an intention which [was] not evidenced in the original form." *Id.* (quoting *Welsh v. Kuntz,* 196 Md. 86, 93, 75 A.2d 343, 345 (1950)).

The Majority certainly would have been justified in reviewing the legislative history of the predecessor to § 9–202 (Md. Code, Art. 101, § 21(b)(1)), including the Revisor's Notes to the recodification and the Report of the Department of Legislative Reference on House Bill (H.B.) 1–1991, had it found § 9–202 to be ambiguous.[2, 3] Only upon the occasion that the statute's plain meaning is uncertain would the presumption arise that a recodified version does not affect a substantive change unless the Legislature's intent to modify the law was unmistakable.[4] *Triangle General Contractors,* 366 Md. at 422–23, 784 A.2d at 543.

In addition to the Revisor's Notes and the Report of the Department of Legislative Reference on H.B. 1 cited in the Majority opinion, it should be noted that the recodification was not merely a renumbering or a series of stylistic changes to

2. Although the Majority opinion states that the statute is "not ambiguous," it later states that the statute's silence about whether lawful employment is a requirement for adults creates an ambiguity in the statute. Maj. op. at 729 n. 7.

3. Section 9–202 may be ambiguous, but not for the reason set forth in footnote 7 of the Majority opinion. Either there is no lawful employment requirement for adults because none is expressly provided in subsection (a), as the Majority opines, or there is a lawful employment requirement for adults, as I believe the plain meaning reveals. That great minds disagree as to the section's meaning might create an ambiguity that necessitates a look at the legislative history to ascertain the Legislature's true intent. The evidence found in the legislative history of § 9–202 is nonetheless inconsistent.

4. A presumption that the Court overcame in both *Triangle General Contractors,* 366 Md. at 422, 784 A.2d at 542, and *Abramson,* 328 Md. at 736–37, 616 A.2d at 901–02.

the prior relevant law. Chapter 8 of the Acts of 1991 (enacted H.B. 1–1991); *see also Triangle General Contractors,* 366 Md. at 422, 784 A.2d at 543 (discussing the Maryland Prevailing Wage Act recodification process). Yet, the Legislature unanimously enacted, relatively early in the 1991 session (21 March 1991) and without amendment, the 845–page H.B. 1 that became the Labor and Employment Article. The Legislature turned to the subject of the Workers' Compensation Act an additional five times during the 1991 session (enacted after H.B. 1 was passed), enacting both substantive and stylistic changes to various sections, though not to § 9–202 (all of these bills addressed other sections of the new Labor and Employment Article). *See* Chapters 21, 440, 510, 575, 669 of the Acts of 1991. That these other bills made no further changes or corrections to § 9–202 as enacted in H.B. 1, suggests that the Legislature at least acquiesced in the changes, even the substantive ones, made by H.B. 1 in reenacting the Workers' Compensation Act as part of the Labor and Employment Article, the Revisor's Note notwithstanding.

Perhaps the Majority rationalizes its interpretation of the statute because it believes that H.B. 1 mistakenly failed to include "adults" in § 9–202(b) when it re-structured former Md. Code, Art. 101, § 21(b)(1). The predecessor to § 9–202, § 21(b)(1), provided that "[e]very person, including a person under eighteen years of age, whether lawfully or unlawfully employed ..." was a covered employee. The clause "whether lawfully or unlawfully employed" in § 21(b)(1) most likely modified "every person"—adults and minors, although there is room for grammatical debate on that score. The Code Revision Commission that drafted H.B. 1–1991 may have misunderstood in the reconstruction process the grammatical sense of the sentence in the predecessor statute and revised the section into two parts; be that as it may, there is no doubt in my mind that the clause "whether lawfully or unlawfully employed" in § 9–202(b) now modifies only minors. Whether the Legislature and its advisors/staff in 1991 blundered into the current structure of § 9–202, the Majority's argument that the Legislature intended no substantive changes to the law in

its adoption of H.B. 1–1991 is hindered because the Legislature had ample opportunity to correct the mistake (if a mistake it was) later in the same session as well as over the years since.

Despite the potential for a drafting error, we should not deign to repair the presumed damage. The Court, though charged with the duty to ascertain and effectuate the intent of the Legislature, is not obliged to fix the Legislature's error, if there is one here, especially when a statute otherwise appears clearly written on its face. A better policy, and one usually followed by this Court, is to employ a more disciplined approach and apply the plain meaning rule of statutory construction in such instances. *See Kushell, IV,* 385 Md. at 577, 870 A.2d at 193–94; *Smack,* 378 Md. at 304–05, 835 A.2d at 1178–79; *Triangle General Contractors,* 366 Md. at 421–22, 784 A.2d at 542; *Chesapeake Amusements,* 363 Md. at 28, 766 A.2d at 1042; *Abramson,* 328 Md. at 736–37, 616 A.2d at 901–02.

Thus, even had the Majority found § 9–202 to be ambiguous (which perhaps it did—*see supra* note 2) and concluded from its legislative history that the Legislature intended to provide that both minors and adults were not subject to a lawful employment requirement, the Court is not in a legitimate position to revise the statute by judicial fiat. To do so is inconsistent with our more modern cases and extends the Court's reach beyond limits presumably we would respect in a case with less compelling social and policy implications. Therefore, I respectfully dissent. I would reverse the judgment of the Circuit Court for Montgomery County.