994 A.2d 507

Jamie ANDERSON

v.

BOARD OF EDUCATION OF MONTGOMERY
COUNTY, Maryland.

Brenda O. Robinson

v.

Montgomery County, Maryland.

Nos. 2853 Sept.Term, 2008, 0604 Sept.Term, 2009.

Court of Special Appeals of Maryland.

May 6, 2010.

Kenneth M. Berman, Gaithersburg, MD and Jonathan S. Beiser, Rockville, MD (Clifford B. Sobin, Nadine Osinski, H. David Leibensperger, Berman, Sobin, Gross, Feldman & Darby, LLP, Gaithersburg, MD, Jason T. Massey, Ashcraft & Gerel, LLP, Rockville, MD), all on the briefs, for Appellant.

Wendy B. Karpel (Leon Rodriquez, County Atty., Marc P. Hansen, Deputy County Atty., Karen L. Federman Henry, Div. Chief, on the brief), Rockville, MD, for Appellee.

Panel: MEREDITH, GRAEFF and LAWRENCE F. RODOWSKY (Retired, Specially Assigned), JJ.

MEREDITH, Judge.

In this opinion, we address a question raised in two separate appeals about the statutory construction of a section of the Maryland Workers' Compensation Act, namely, Maryland Code, Labor & Employment Article ("LE"), § 9–629, a statute that was first enacted in 1987 to create an intermediate level of compensation for work-related injuries. We are persuaded that, in each case, the Workers' Compensation Commission ("the Commission") correctly applied LE § 9–629 in ordering that compensation be paid at the intermediate rate because the total compensation it awarded in each case was in excess of 75 weeks. Accordingly, we conclude that the Circuit Court for Montgomery County erred in its ruling to the contrary, and we shall reverse the judgments entered by the circuit court in each case.

Prior to the enactment of the statute that is now codified as LE § 9–629, there were only two compensation rates, a higher one for injuries that qualified as "serious disabilities" under the predecessor to LE § 9–630, and a lower rate that applied to all other cases. In 1987, as part of a major overhaul of Maryland's workers' compensation laws, the General Assembly reduced the compensation rate employers were required to

pay for minor injuries, and created an intermediate compensation rate, sometimes referred to as "second tier" compensation, which applies "[i]f a covered employee is awarded compensation for a period equal to or greater than 75 weeks but less than 250 weeks." LE § 9–629.

In one of the appeals before us, No. 2853, September Term 2008, the appellant is Jamie Anderson, who suffered a work-related injury while employed by the appellee in that case, the Board of Education of Montgomery County, Maryland. In Anderson's case, the Commission found that she had suffered a 20% impairment to her body as a result of the injury to her back, and that half of the impairment was pre-existing, and half of the impairment (*i.e.,* 10% impairment) was due to the accidental injury. The Commission also found that she had suffered a 59% impairment to her leg, of which only 9% was due to the accidental injury. These percentages of disability resulted in an award of 50 weeks of compensation for the back and 27 weeks of compensation for the leg. The Commission ordered the employer to pay Anderson 77 weeks of compensation, all at the second tier rate.

The underlying facts of the second appeal, No. 604, September Term 2009, are similar. In that case, the appellant is Brenda O. Robinson, who suffered a work-related injury while employed by Montgomery County, the appellee in Robinson's case. The Commission found that Robinson "[s]ustained a permanent partial disability resulting in 40% loss of use of the right hand/wrist; and has an overall 30% industrial disability to the body due to an injury to the back, 10% is due to this accidental injury and 20% is pre-existing." This finding was equivalent to an award of 100 weeks of compensation for the hand/wrist, plus 50 weeks of compensation for the back injury. The Commission determined that Robinson was entitled to be compensated at the second tier rate for the entire 150 weeks. Accordingly, the employer was ordered by the Commission to "pay claimant at the rate of $267.00, payable weekly, beginning September 7, 2007, for a period of 150 weeks; . . . ."

For simplicity, we will refer to the appellee in both cases as "the County." In each case, the County filed a petition for judicial review in the Circuit Court for Montgomery County, challenging the Commission's determination that the injuries qualified for compensation at the second tier rate. In each case, the County filed a motion for summary judgment, pointing out that one of each claimant's injuries related to a "scheduled" member under LE § 9–627(a) through (j), but the other injury fell under the category of losses defined as "other cases" under LE § 9–627(k). The County argued in each case that compensation awarded for a scheduled member could not be combined with compensation awarded for other cases in order to meet the 75 week threshold for compensation at the second tier rate pursuant to LE § 9–629. In each case, the circuit court agreed with the County's contention that the Commission erred in combining the two component awards for the purpose of meeting the 75 week threshold under LE § 9–629, and the claimants then appealed to this Court.

The County relies primarily upon a 1968 case in which the Court of Appeals construed a different version of the section providing for a higher compensation rate for serious injuries. In *Barnes v. Ezrine Tire Co.*, 249 Md. 557, 241 A.2d 392 (1968), the Court of Appeals held that, under the language of the Workers' Compensation Act then in effect, it was not appropriate to add awards for specifically scheduled injuries with awards for unscheduled injuries in order to meet the statutory threshold for enhanced compensation. But this statutory construction was dictated by the language of the statute then in effect, which could not be reasonably interpreted any other way.

As the Court of Appeals noted in *Barnes*, 249 Md. at 558–59, 241 A.2d 392, the pertinent sections of the act then in effect provided as follows:

Subsection 36(3) sets out a schedule of benefits and the "weeks" of compensation for *specific injuries* resulting in permanent partial disability. Subsection 36(4) provides (1) that all *other cases* of permanent partial disability are to be determined from the percentage by which the industrial use

of the body is impaired as a result of the injury and (2) for the awarding of compensation in such proportion as the determined loss bears to the sum of $12,500. Under both subsections the award is payable at a maximum weekly rate of $25. Subsections 3a and 4a created new categories of persons having a serious disability and provided for an increased rate and amount of compensation for those persons coming within the categories. Subsections 3a and 4a state in pertinent part—

"(3a) [Permanent partial disability—Specific injuries]— Serious disability.—A person who receives under subsection (3) of this section an award for a period of one hundred and seventy-five weeks or more is thereby considered to have a serious disability. He automatically shall be entitled to (in addition to the award under subsection (3)) an extra award of a number of weeks equal to one third (computed to the nearest whole number) of the number of weeks awarded under subsection (3); and the award of compensation to him in no case shall exceed forty dollars per week; and as to him the maximum limitation of $12,500 shall not apply. * * *."

* * *

"(4a) [Permanent partial disability—Other cases]—Serious disability.—A person who receives under subsection (4) of this section an award equal in total to forty per centum or more of $12,500 is thereby considered to have a serious disability. He automatically shall be entitled to (in addition to the award under subsection (4)) an extra award of a number of weeks equal to one third (computed to the nearest whole number) of the number of weeks awarded under subsection (4); and the award of compensation to him in no case shall exceed forty dollars per week; and as to him the maximum limitation of $12,500 shall not apply. * * *."

The plain language of the statute in effect at the time *Barnes* was decided provided two distinctly separate paths to enhanced compensation. Under subsection 36(3 a), "A person who receives *under subsection (3) of this section* an award for

a period of one hundred and seventy-five weeks or more is thereby considered to have a serious disability." 249 Md. at 559, 241 A.2d 392 (emphasis added). And under subsection 36(4a), "A person who receives *under subsection (4) of this section* an award equal in total to forty per centum or more of $12,500 is thereby considered to have a serious disability." *Id.* (emphasis added). The Court of Appeals pointed out that "the legislature *intentionally* created two new categories. Had the legislature intended that 3a and 4a should be read together, it undoubtedly would have enacted only one additional subsection to § 36 with regard to serious injuries." *Id.* at 562, 241 A.2d 392. The Court further observed that the qualifying conditions under the two subsections were different. *Id.* "There is therefore no basis for combining a nonqualifying award under one subsection with a qualifying award under the other subsection so as to make both of them qualify." *Id.*

The General Assembly responded to the *Barnes* case by promptly enacting Chapter 446 of 1970 Laws of Maryland, revising the statutory definition of "serious disability." The revised provision expressly recognized that the threshold could be met by combining separate awards of compensation, as long as they arose out of the same accident. As revised, subsection 36(4a) provided: *"Serious disability.*—A person who, from one accident, receives an award of compensation for a period of two hundred and fifty (250) weeks or more under subsections (3) or (4) or a combination of both, is thereby considered to have a serious disability; . . . ."

After reviewing this statutory history in *Carter v. Allen, Son & Company, Inc.,* 28 Md.App. 541, 542–44, 346 A.2d 453 (1975), this Court stated: "There can be no doubt of the legislative intent in the passage of the 1970 legislation whereby § 36(3a) and § 36(4a) were repealed and the new § 36(4a) enacted." *Id.* at 544, 346 A.2d 453. We observed, *id.* at 546, 346 A.2d 453:

It is patent that the new subsection, combining the two prior subsections into one, was a legislative response to [the *Barnes* ] decision. The new legislation made clear that the *full actual disability* of a workman must be considered in

the determination of "serious disability," whether it was the product of scheduled specific injuries under § 36(3) or to the body as a whole under the "other cases" provisions of § 36(4) or to a combination of both.

The current statutory successor to the provision for enhanced compensation for cases involving serious disability is LE § 9–630, which provides for higher compensation "if a covered employee is given an award or a combination of awards resulting from 1 accidental personal injury or occupational disease for 250 weeks or more under § 9–627 of this subtitle.... "

As noted above, there was no intermediate level of compensation for awards that did not qualify for enhancement under the "serious" category until 1987, when the General Assembly enacted Chapter 591, § 2, 1987 Laws of Maryland, at 2681 *et seq.* As part of a major revision to the Workers' Compensation Act—then codified in Maryland Code (1957), Article 101— Chapter 591 reduced the compensation rate to be paid on the least serious injuries, and created a second tier of compensation that compensated injuries in which the award was between 75 and 249 weeks at a rate similar to that which had previously applied to all non-serious cases. The following language was adopted as Art. 101, § 36(3)(a):

(3)(a) In case of disability partial in character but permanent in quality, compensation shall be paid to the employee at the rates enumerated for the periods as follows:

(i) .... An award of compensation for a period less than 75 weeks in a claim arising from events occurring on or after January 1, 1989 shall be paid at a rate of thirty-three and one-third per centum of the average weekly wages, in no case to exceed $82.50 per week.

(ii) An award of compensation for a period greater than or equal to 75 weeks but less than 250 weeks shall be paid at a rate of sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed thirty-three and one-third per centum of the average weekly wage of the

State of Maryland as determined by the Department of Employment and Training.

(iii) An award of compensation, from one accident, for a period equal to or greater than 250 weeks as specified in paragraphs (c) through (*l*), inclusive, of this subsection, or any combination of awards thereunder, except that an award for disfigurement or mutilation under paragraph (h) of this subsection shall not be considered a determination of serious disability, shall be increased by one-third of the number of weeks....

Specific injuries were described in subsections 3(c) through (g). Mutilation and disfigurement were covered by subsection 3(h). A description of "an industrial loss" in cases involving less than 75 weeks of compensation was set forth in subsection 3(i). And "all other cases" were provided for as follows in subsection 3(j):

In all other cases of disability other than those specifically enumerated disabilities set forth in paragraphs (c) through (i), inclusive, of this section, which disability is partial in character, but permanent in quality, the Commission shall determine the portion of percentage by which the industrial use of the employee's body was impaired as a result of the injury ... and compensation shall be paid to the employee at the rates enumerated for the periods as provided in subsection 3(a)(i) through (iii), inclusive, of this section.

In other words, subsection 3(j) directed the Commission, after determining the percentage of partial disability in the cases that were not covered by subsections 3(c) through 3(i), to order compensation pursuant to the three tiers of rates set forth in subsection 3(a)(i) through (iii).

Despite the fact that there is nothing in subsection 3(a)(i) or 3(a)(ii) that directed the Commission not to combine awards for scheduled injuries with awards for other cases for the purpose of determining whether the second tier rate was applicable, the County argues that we must infer such a legislative intent because subsection 3(a)(iii) includes the phrase "or any combination of awards." Under the County's

interpretation of the statute, the Commission could award an injured worker 74 weeks of compensation for scheduled members as well as 74 weeks of compensation for "other cases," and, even though the Commission's total award was for 148 weeks of compensation, the employee would not be eligible for compensation at the second tier rate. We reject that interpretation.

The bill file for Chapter 591, § 2, reflects that, when the bill was first introduced, subsections 3(a)(ii) and 3(a)(iii) were worded in parallel, and neither included any reference to a combination of awards. But an amendment to subsection 3(a)(iii) added language to that subsection only. By the amendment to the bill, the following language was inserted after "an award of compensation, from one accident, for a period equal to or greater than 250 weeks":

AS SPECIFIED IN PARAGRAPHS (C) THROUGH (L), INCLUSIVE, OF THIS SUBSECTION, OR ANY COMBINATION OF AWARDS THEREUNDER, EXCEPT THAT AN AWARD FOR DISFIGUREMENT OR MUTILATION UNDER PARAGRAPH (H) OF THIS SUBSECTION SHALL NOT BE CONSIDERED A DETERMINATION OF SERIOUS DISABILITY....

Because no exception for awards for disfigurement or mutilation is set forth in subparagraph 3(a)(ii), it appears to us that the intent of the amendment to subsection 3(a)(iii) was to carve out such awards from the determination of whether the total weeks of compensation exceeded 249 weeks.

When the Workers' Compensation Act was recodified as Title 9 of the Labor and Employment Article, pursuant to Chapter 8 of the 1991 Laws of Maryland, the provision for the second tier compensation rate became LE § 9–629. The Revisor's Note stated that the section was "derived without substantive change from former Art. 101, § 36(3)(a)(ii)." 1991 Laws of Maryland at 883. Section 9–629 currently reads:

If a covered employee is awarded compensation for a period equal to or greater than 75 weeks but less than 250 weeks, the employer or its insurer shall pay the covered

employee weekly compensation that equals two-thirds of the average weekly wage of the covered employee but does not exceed one-third of the State average weekly wage.

We detect nothing in either the plain language of this statute or the legislative history that supports the County's contention that, under LE § 9–629, the Commission was precluded from considering its total award of compensation for determining whether the employee was entitled to be paid at the second tier rate. Clearly, Robinson and Anderson were each "awarded compensation for a period equal to or greater than 75 weeks" for injuries each sustained in a single accident. In our view, the Commission properly applied LE § 9–629 in each case.

Our view is reinforced by the remedial nature of the statutory scheme. The Court of Appeals has stated that the Workers' Compensation Act is a remedial statute, and as such, it " 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant.' " *Design Kitchen v. Lagos,* 388 Md. 718, 724, 882 A.2d 817 (2005) (quoting *Harris v. Board of Education,* 375 Md. 21, 57, 825 A.2d 365 (2003)). Even though LE § 9–102 does not expressly mandate construing the statute in a manner that favors injured employees, § 9–102(a) nevertheless states: "This title shall be construed to carry out its general purpose."

We discussed the general purpose of the act in *Simmons v. Comfort Suites Hotel,* 185 Md.App. 203, 216, 968 A.2d 1123 (2009), where we stated:

The purpose of the Act was

"to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment," *Howard Co. Ass'n, Retard. Cit. v. Walls,* 288 Md. 526, 531, 418 A.2d 1210 (1980), and "to promote the general welfare of the State and to prevent the State and its

taxpayers from having to care for injured workmen and their dependents, when under the law as it previously existed, such workmen could not recover damages for their injuries." *Paul v. Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544, 546 (1944).

*Breitenbach v. N.B. Handy Co.,* 366 Md. 467, 474, 784 A.2d 569 (2001).

In *Breitenbach,* the Court of Appeals stated that, when interpreting the Maryland Workers' Compensation Act, a court should keep in mind that "the Act is remedial in nature and 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.'" *Id.* at 472, 784 A.2d 569 (quoting *Para v. Richards Group,* 339 Md. 241, 251, 661 A.2d 737 (1995)). "[A]pplying a canon of construction specific to the Act, if the intent of the legislature is ambiguous or remains unclear, we resolve any uncertainty in favor of the claimant." *Id.* at 473, 784 A.2d 569. The Court cautioned, however, that it "may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail. . . . Similarly, the Court may not create ambiguity or uncertainty in the Act's provisions where none exists so that a provision may be interpreted in favor of the injured claimant." *Id.*

In the present cases, we would need to stretch to find any ambiguity in the statutory language of LE § 9–629. As noted above, the history of the creation of the second tier of compensation persuades us that the legislature intended for the Commission to consider the total compensation awarded as a consequence of a single accident in making its determination of whether the enhanced rate was applicable.

Accordingly, there being no other facts or issues in dispute, the circuit court should have entered summary judgment for Robinson and Anderson, confirming the Commission's awards in their respective cases. We shall order that it do so in each case.

JUDGMENTS REVERSED. CASES REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH INSTRUCTIONS THAT IT ENTER JUDGMENT IN FAVOR OF EACH APPELLANT. COSTS TO BE PAID BY APPELLEES.