76 A.3d 1159

**MONTGOMERY COUNTY, Maryland**

v.

**Brenda O. ROBINSON.**

**Board of Education of Montgomery County, Maryland**

v.

**Jamie Anderson.**

**Nos. 67, 68 Sept. Term, 2010.**

Court of Appeals of Maryland.

Sept. 27, 2013.

**64**

Wendy B. Karpel, Associate County Attorney (Marc P. Hansen, Acting County Attorney, and Karen L. Federman Henry, Division Chief, Office of the County Attorney, Rockville, MD), on brief, for Petitioner.

Jonathan S. Beiser (Jason T. Masssey of Ashcraft & Gerel, LLP, Rockville, MD), on brief, for Respondent in No. 67.

Kenneth M. Berman (H. David Leibensperger of Berman, Sobin, Gross, Feldman & Darby, LLP, Gaithersburg, MD), on brief, for Respondent in No. 68.

Bruce M. Bender, Axelson, Williamowsky, Bender & Fishman, P.C., Rockville, MD, brief of the Maryland Association For Justice as Amicus Curiae for Respondent in No. 68.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY,* ADKINS and BELL,** JJ.

BELL, C.J. (retired).

In 1968, this Court was presented with the question of whether, under the Workmen's Compensation Act, Maryland Code (1957, 1967 Cum. Supp.), Art. 101, the predecessor of The Workers' Compensation Act, Maryland Code (1991, 2008 Repl. Vol.) Title 9 of the Labor and Employment Article (L & E), "an award of disability under [§] 36(4), concerning other cases, may be combined with an award under [§] 36(3), concerning specific injuries, so as to bring both awards within the purview of the serious disability provisions of [§] 36(4a) and [§] 36(3a)." *Barnes v. Ezrine Tire Co.*, 249 Md. 557, 558, 241 A.2d 392, 393 (1968). Art. 101, § 36(3), like its successor today, L & E § 9–627(a)–(h), prescribed a schedule of benefits and the "weeks" of compensation for specific injuries resulting in permanent partial disability. Section 36(4) provided, as its successor L & E § 9–627(k) also does, that all other cases of permanent partial disability are to be determined from the percentage by which the industrial use of the body is impaired as a result of the injury.[1] Sections 36(3a) and 36(4a) provided for an increased rate and amount of compensation for those persons suffering a "serious disability," which they both defined. Sections 36(3a) and 36(4a)[2] provided:

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

** Bell, C.J., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Under § 36(3), compensation was awarded in the proportion that the loss bore to the sum of $12,500. In the case of § 9–627(k), compensation is pegged to 500 weeks.

2. Under both sections, the award was payable at a maximum weekly rate of $25.

"(3a) (Permanent partial disability-Specific injuries)-Serious disability.—A person who receives under subsection (3) of this section an award for a period of one hundred and seventy-five weeks or more is thereby considered to have a serious disability. He automatically shall be entitled to (in addition to the award under subsection (3)) an extra award of a number of weeks equal to one third (computed to the nearest whole number) of the number of weeks awarded under subsection (3); and the award of compensation to him in no case shall exceed forty dollars per week; and as to him the maximum limitation of $12,500 shall not apply. "(4a) (Permanent partial disability-Other cases)-Serious disability.—A person who receives under subsection (4) of this section an award equal in total to forty per centum or more of $12,500 is thereby considered to have a serious disability. He automatically shall be entitled to (in addition to the award under subsection (4)) an extra award of a number of weeks equal to one third (computed to the nearest whole number) of the number of weeks awarded under subsection (4); and the award of compensation to him in no case shall exceed forty dollars per week; and as to him the maximum limitation of $12,500 shall not apply."

The Workers' Compensation Commission ("Commission"), reading the sections together, combined the awards so that the claimant qualified for serious disability under both § 36(3a) and § 36(4a), the effect of which was increased compensation. Barnes, 249 Md. at 560, 241 A.2d at 394. The Baltimore City Court[3] granted summary judgment in favor of the employer and insurer, and we affirmed. *Id.* at 563, 241 A.2d at 396. In so doing, we rejected the claimant's argument that there was a conflict or ambiguity in the compensation law,

---

3. One of the 6 courts that constituted the Supreme Bench of Baltimore City, the predecessor to the Circuit Court for Baltimore, which, following the repeal of the constitutional provisions relating to the Supreme Bench of Baltimore City and its constituent courts, *see* Ch. 523 of the Acts of 1980, adopted by the voters in November 1980, replaced that court. *Bienkowski v. Brooks*, 386 Md. 516, 540, 873 A.2d 1122, 1136 (2005).

and held that there is "no basis for combining a non-qualifying award under one subsection with a qualifying award under the other subsection so as to make both of them qualify." *Id.* at 562, 241 A.2d at 395. We explained:

> "The arguments made by the claimant fly in the face of the legislative intent. Chapter 322 was enacted 'to create certain new categories (emphasis ours) of persons having a serious disability.' Subsection (3a) sets forth the conditions necessary for an injury to qualify as a serious disability under 36(3) relating to specific injuries. Likewise, subsection (4a) sets forth the conditions necessary to qualify as a serious disability under 36(4) concerning other injuries. In so doing, the legislature intentionally created two new categories. Had the legislature intended that (3a) and (4a) should be read together, it undoubtedly would have enacted only one additional subsection to s 36 with regard to serious disabilities. Furthermore, the qualifying conditions under 36(3a) and 36(4a) are not identical. In order for a claimant to qualify for a serious disability award under (3a), he must have been awarded compensation for 175 weeks or more under 36(3). And in order for him to qualify under (4a), the claimant must have been awarded compensation for 200 weeks or more (i.e., an award equal to 40% or more of $12,500 at $25 a week)."

*Barnes,* 249 Md. at 562, 241 A.2d at 395.

Following the Barnes decision, the General Assembly amended § 36. *See* Ch. 446, Acts of 1970. Significantly, in light of the Barnes holding and the rationale underlying it, the "serious disability" provisions previously separately codified as §§ 36(3a) and 36(4a) were combined into a single provision, § 36(4a), which was made applicable to all injuries arising "from one accident," whether enumerated in § 36(3) or falling into the other cases category of § 36(4). It provided:

> "(4a). Serious Disability.—A person who, from one accident, receives an award of compensation for a period of two hundred and fifty (250) weeks or more under subsections (3) or (4) or a combination of both, is thereby considered to have a Serious Disability; except any award for disfigure-

ment or mutilation under subsection (3)(f) of this section shall not be considered in the determination of a Serious Disability. The weeks for such award shall be increased by one-third (computed to the nearest whole number); and the compensation shall be for sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed Sixty-five dollars ($65.00) per week and not less than a minimum of twenty-five dollars per week unless the employee's established weekly wages are less than twenty-five dollars per week at the time of the injury, in which event he shall receive compensation equal to his full wages. This subsection, to the extent of any inconsistency, prevails over subsection (3) and (4); but otherwise subsections (3) and (4) apply to persons covered by this subsection. Provided, however, that any additional compensation for permanent partial disability on a petition to reopen shall not increase the amount of compensation previously awarded and actually paid."

Sections 36(3) and (4), to which amended § 36(4a) expressly referred, continued to provide as they did prior to the amendment to the serious disability provision.

Thus, as the Court of Special Appeals observed in *Carter v. Allen, Son & Company,* Inc., 28 Md.App. 541, 544, 346 A.2d 453, 455–56 (1975), "There can be no doubt of the legislative intent in the passage of the 1970 legislation whereby § 36(3a) and § 36(4a) were repealed and the new § 36(4a) enacted." The court explained:

"It is patent that the new subsection, combining the two prior subsections into one, was a legislative response to [the *Barnes* ] decision. The new legislation made clear that the *full actual disability* of a workman must be considered in the determination of 'serious disability,' whether it was the product of scheduled specific injuries under § 36(3) or to the body as a whole under the 'other cases' provisions of § 36(4) or to a combination of both."

*Id.* at 546, 346 A.2d at 456. *See Duckworth v. Kelly–Springfield Tire Co.,* 30 Md.App. 348, 354, 353 A.2d 1, 4, *aff'd,* 278 Md. 361, 363 A.2d 965 (1976).

Subsequently, in 1987, pursuant to Recommendation No. 20 of the Governor's Comm'n to Study the Workers' Comp. Sys., (1987), by Acts of 1987, ch. 591, § 2, effective January 1, 1988, the General Assembly again amended § 36, this time to add, inter alia, another level of compensation for permanent partial disability to provide for the compensation of disabilities "for a period greater than or equal to 75 weeks but less than 250 weeks." [4] So amended, § 36(3)(a) provided, as relevant:

"(3) Permanent partial disability—Specific injuries.—(a) In case of disability partial in character but permanent in quality, compensation shall be paid to the employee at the rates enumerated for the periods as follows:

"(i) 1. An award of compensation for a period less than 75 weeks in a claim arising from events occurring on or after January 1, 1988 shall be paid at a rate of thirty-three and one-third per centum of the average weekly wages, in no case to exceed $80 per week. An award of compensation for a period less than 75 weeks in a claim arising from events occurring on or after January 1, 1989 shall be paid at a rate of thirty-three and one-third per centum of the average weekly wages, in no case to exceed $82.50 per week.

"2. In all cases of disability for loss for a period of less than 75 weeks for an injury enumerated in paragraph (c) of this subsection, the compensation shall be paid at the rate specified in subparagraph (ii) of this paragraph.

"3. Public safety employees, as defined in § 67(16) of this article, shall be paid benefits, for an award of compensation for a period less than 75 weeks, at the same

---

**4.** The permanent partial disability statutes, extant post-*Barnes* 249 Md. 557, 241 A.2d 392, in 1970, Md. Code (1957, 1970 Cum. Supp.) Art. 101, § 36(3) and (4) provided for only two levels of compensation:

1. For periods of 75 weeks up to 249 weeks, the prescribed compensation rate was 2/3 of the employee's average weekly wage ("AWW"), not to exceed 1/3 of the state average weekly wage ("SAWW").
2. For periods of 250 weeks or more, the prescribed compensation rate was 2/3 of AWW, not to exceed 2/3 of SAWW, plus 1/3 additional weeks.

Section 36(4a).

rate provided in this paragraph for awards for a period equal to 75 weeks but less than 250 weeks.

"(ii) An award of compensation for a period greater than or equal to 75 weeks but less than 250 weeks shall be paid at a rate of sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed thirty-three and one-third per centum of the average weekly wage of the State of Maryland as determined by the Department of Economic and Employment Development.

"(iii) An award of compensation, from one accident, for a period equal to or greater than 250 weeks as specified in paragraphs (c) through (*l*), inclusive, of this subsection, or any combination of awards thereunder, except that an award for disfigurement or mutilation under paragraph (h) of this subsection shall not be considered a determination of serious disability, shall be increased by one-third the number of weeks (computed to the nearest whole number) and the total shall be paid at a rate of sixty-six and two-thirds per centum of the average weekly wages, in no case to exceed seventy-five per centum of the average weekly wage of the State of Maryland as determined by the Department of Economic and Employment Development. This subparagraph, to the extent of any inconsistency, prevails over paragraphs (c) through (*l*) of this subsection; but otherwise paragraphs (c) through (*l*) of this subsection apply to persons covered by this subparagraph. . . ."

Unlike the provision regarding serious disability, which made it clear that a combination of awards pursuant to the scheduled benefits and "other cases" could be utilized to achieve serious disability status, the new level of disability did not expressly address whether awards could be combined in order to allow a claimant to qualify for that level of compensation. In fact, it contained nothing either proscribing or allowing the combination of awards, nor did it make any distinction between scheduled and unscheduled awards.

Section 36 (3) continued to prescribe a schedule of benefits and the "weeks" of compensation for specific injuries in sub-

sections (c)—(k), and to provide for "other cases" in subsection (j), which stated:

"In all other cases of disability other than those specifically enumerated disabilities set forth in paragraphs (c) through (i), inclusive, of this section, which disability is partial in character, but permanent in quality, the Commission shall determine the portion or percentage by which the industrial use of the employee's body was impaired as a result of the injury and in determining such portion or percentage of impairment resulting in industrial loss, the Commission shall take into consideration, among other things, the nature of the physical injury, the occupation, experience, training and age of the injured employee at the time of injury, and shall award compensation in such proportion as the determined loss bears to 500 weeks and compensation shall be paid to the employee at the rates enumerated for the periods as provided in subsection (3)(a)(i) through (iii), inclusive, of this section."

In 1991, as part of Code revision, the Legislature re-codified the Workers' Compensation statute as Title 9 of the Labor and Employment Article. *See* Acts of 1991, ch. 8. The re-codification made no substantive changes to the schedule of specific injuries or to the language defining the injuries or to the three levels of compensation prescribed for permanent partial disability. Section 9–627(a)–(j), like its predecessor, § 36(3)(c)-(k), contains a schedule in which the duration of compensation for certain injuries to the members of the body is pre-determined. In the case of injuries to which the schedule is applicable, the Commission evaluates each injury sustained, makes a determination as to percentage of impairment, and apportions the percentage of the injury that is work-related against any preexisting injury or condition. *See* § 9–627(a)–(j). If, however, a claimant suffers an injury to the body that is not "scheduled," "the [Commission] . . . determine[s] the percentage by which the industrial use of the covered employee's body was impaired [as a result of this injury and] . . . award[s] compensation to the covered employee in the proportion that the determined loss bears to 500 weeks." § 9–627(k). *Id.* Section 9–630, addressing the most

serious permanent partial disabilities, still contained, slightly modified, the language first adopted in response to *Barnes* and retained when the statute was amended in 1987 (effective 1988), which expressly authorized combining awards, with the exception of "[a]n award for disfigurement or mutilation, [which] may not be used to make up the 250 weeks under paragraph (1) of this subsection," to reach this level of compensation. Section 9–629, the next most serious level of disability, which did not contain a similar provision when initially enacted in 1987, was reenacted without adding any combination language.[5]

The lowest level of compensation continues to govern all situations when "a covered employee is awarded compensation for less than 75 weeks;" however, the rate of compensation varies depending on the date of injury.[6] Md.Code (1991, 2008 Repl. Vol.), § 9–628 of the Labor & Employment Article.[7] The middle level of compensation takes effect when "a covered employee is awarded compensation for a period equal to or greater than 75 weeks but less than 250 weeks." § 9–629.[8]

---

**5.** The statutory scheme has been revised several times since the major amendments enacted in 1987; however, the changes were limited to the compensation rate percentages/amounts, with no changes being made to the weekly rate for each compensation level or the language permitting the combining of awards.

**6.** The Legislature has amended § 9–628 from time to time to specify the wage to be used in a particular year. For example, in 1988 the legislature provided the average weekly wage would not exceed $80; in 1989 the legislature provided the wage would not exceed $82.50; in 1993 the legislature provided the wage would not exceed $94.20.

**7.** Maryland Code (1991, 2008 Repl. Vol.) § 9–628(e) of the Labor & Employment Article applies to accidents occurring between January 1, 2000, and January 1, 2010, and provides:

"Except as provided in subsections (g) and (h) of this section, if a covered employee is awarded compensation for less than 75 weeks in a claim arising from events occurring on or after January 1, 2000, the employer or its insurer shall pay the covered employee compensation that equals one-third of the average weekly wage of the covered employee but does not exceed $114."

**8.** Maryland Code (1991, 2008 Repl. Vol.) § 9–629 of the Labor & Employment Article provides:

Compensation at this level remains equal to "two-thirds of the average weekly wage of the covered employee but [cannot] exceed one-third of the State average weekly wage." *Id.* The highest level of compensation applies when "a covered employee is given an award or a combination of awards resulting from 1 accidental personal injury or occupational disease for 250 weeks or more." § 9–630.[9] The time period of the award continues to be "increase[d] . . . by one-third the number of weeks in the award or awards, computed to the nearest whole number" and the employee is to be compensated at "two-thirds of the average weekly wage of the covered employee, but [not to] exceed 75% of the State average weekly wage." *Id.*

In this consolidated appeal by Montgomery County, Maryland and the Board of Education of Montgomery County, collectively [10] "the petitioners" or "Montgomery County," we are asked to decide whether Brenda Robinson ("Robinson") and Jamie Anderson ("Anderson"), collectively the respon-

---

"If a covered employee is awarded compensation for a period equal to or greater than 75 weeks but less than 250 weeks, the employer or its insurer shall pay the covered employee weekly compensation that equals two-thirds of the average weekly wage of the covered employee but does not exceed one-third of the State average weekly wage."

**9.** Maryland Code (1991, 2008 Repl. Vol.) § 9–630(a) of the Labor & Employment Article provides, in relevant part:

"(1) Except as provided in paragraph (2) of this subsection, if a covered employee is given an award or a combination of awards resulting from 1 accidental personal injury or occupational disease for 250 weeks or more under § 9–627 of this subtitle:

"(i) the Commission shall increase the award or awards by one-third the number of weeks in the award or awards, computed to the nearest whole number; and

"(ii) the employer or its insurer shall pay the covered employee weekly compensation that equals two-thirds of the average weekly wage of the covered employee, but does not exceed 75% of the State average weekly wage.

"(2) An award for disfigurement or mutilation under § 9–627(i) of this subtitle may not be used to make up the 250 weeks under paragraph (1) of this subsection."

**10.** We refer to the petitioners interchangeably because they proffer identical legal arguments in support of their positions.

dents, were properly compensated pursuant to L & E § 9–629. Robinson and Anderson each suffered a single on-the-job accident, resulting in permanent partial disability, where at least one of the two injuries was a "scheduled injury" pursuant to § 9–627(a) through (j) and the other arose under "other cases" and was, therefore, an "unscheduled injury" pursuant to § 9–627(k). The Commission awarded Robinson 150 weeks of permanent partial disability benefits. It concluded that Robinson was to be paid at the "second tier" rate of benefits, amounting to $267.00 per week. The employer in her case, Montgomery County, appealed the Commission's award to the Circuit Court for Montgomery County. There, it filed a Motion for Summary Judgment, contesting the Commission's decision to award "second tier benefits" to Robinson. Robinson filed a Motion in Opposition to Summary Judgment. Judge William J. Rowan III granted summary judgment in favor of Montgomery County.

With respect to Anderson, the Commission awarded 77 weeks of benefits, also at the "second tier" rate of permanent partial disability benefits, in her case amounting to $283.00 per week. The employer in her case, the Montgomery County School Board, also appealed the award to the Circuit Court for Montgomery County, seeking favorable summary disposition. Anderson filed a cross-motion for summary judgment in support of the Commission's award and the provision of second tier benefits. Judge Terrence J. McGann similarly reversed the Commission's award.

The respondents timely noted an appeal to the Court of Special Appeals. After hearing argument, the Court of Special Appeals reversed the judgments of the Circuit Court. *Anderson v. Board of Educ. of Montgomery County,* 192 Md.App. 343, 994 A.2d 507 (2010). It held that the Commission could combine awards for scheduled injuries with awards for other cases for the purpose of determining whether the second tier compensation rate was applicable. *Id.* at 353, 994 A.2d at 514. In support of its decision, the intermediate appellate court stated that "the history of the creation of the second tier of compensation persuades us that the legislature intended for

the Commission to consider the total compensation awarded as a consequence of a single accident in making its determination of whether the enhanced rate was applicable." *Id.* The petitioners subsequently petitioned this Court for certiorari review, which we granted. *Montgomery County v. Robinson,* 415 Md. 337, 1 A.3d 467 (2010) and *Board of Education v. Anderson,* 415 Md. 337, 1 A.3d 467 (2010).

We must determine whether the respondents qualified for compensation under § 9–629, that is, whether, like § 9–630, which prescribes a higher level of compensation, § 9–629 authorizes the combining of compensation awards. In making the award pursuant to § 9–629, the Commission combined, in each case, the awards for the scheduled and unscheduled injuries. We hold that it is permissible under the Workers' Compensation Act to combine compensation awards in order to determine which of the three levels of compensation prescribed by §§ 9–628–9–630 is appropriate. Therefore, we affirm the judgments of the Court of Special Appeals, which correctly applied § 9–629 and properly reversed the judgments of the Circuit Court for Montgomery County.

I.

The consolidated cases *sub judice* arise from two separate claims filed by the respondents Robinson and Anderson with the Commission. Robinson filed her claim for permanent injuries that partially impaired her right hand/wrist and back on November 8, 2006. The Commission awarded, pursuant to § 9–627(d), 100 weeks of compensation for Robinson's "scheduled" hand/wrist injury and, pursuant to § 9–627(k), an additional 50 weeks for her "unscheduled" back injury. Combining the scheduled and unscheduled injuries, it then awarded Robinson 150 weeks of compensation at the intermediate level of compensation, pursuant to § 9–629.

Anderson filed a claim for permanent partial injuries sustained to her back and leg on January 11, 2007. The Commission awarded her 50 weeks of compensation for her "unscheduled" back injury, pursuant to § 9–627(k), and an additional

27 weeks of compensation for her "scheduled" leg injury; pursuant to § 9–627(d). Again, the Commission combined the scheduled and unscheduled injuries and awarded 77 total weeks of compensation at the intermediate level of compensation.

The County does not challenge the Commission's determinations as to the severity of the injuries suffered or the period during which compensation was payable for each injury. It challenges only whether the individual injuries can be combined to reach the intermediate compensation level. In that regard, the petitioners challenged the Commission's authority to combine awards made with regard to scheduled and unscheduled injuries in order to award the intermediate level of compensation. They contend that both of Anderson's injuries should be compensated pursuant to § 9–628 at a lower rate of compensation because each injury, by itself, merits less than the required 75 weeks of compensation, which is the threshold for the application of § 9–629. Similarly, the County argues that Robinson's unscheduled back injury should be considered separately from her scheduled arm injury and that the 50–week award for her back injury should be compensated pursuant to § 9–628.[11]

## II.

In this case, § 9–630 expressly authorizes the Commission to combine permanent partial disability awards to obtain the requisite period of disability to render the disability serious, while § 9–629, on the other hand, does not. We must determine whether the latter provision's silence on this point precludes the combining of awards to meet its threshold. This is a question of statutory construction. It is well established that, when engaging in statutory interpretation, "our goal is to identify and effectuate the legislative intent underlying the statute." *Dep't of Health & Mental Hygiene v. Kelly*, 397 Md.

---

11. As Robinson received an award for her arm injury of 100 weeks, the County concedes that the compensation for this award should be calculated at the intermediate level.

399, 419, 918 A.2d 470, 482 (2007). Our analysis always begins with "the normal, plain meaning of the language of the statute, reading the statute as a whole." *Burnside v. Wong*, 412 Md. 180, 194, 986 A.2d 427, 435 (2010) (internal quotations omitted). "If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends." *Id.* at 195, 986 A.2d at 435. If, however, because it is a part of a larger statutory scheme or for some other reason, the language of the statute is not clear, is ambiguous, or is subject to more than one interpretation, "we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose." *People's Ins. Counsel Div. v. Allstate Ins. Co.*, 408 Md. 336, 352, 969 A.2d 971, 980, (2009) (citing *Barbre v. Pope*, 402 Md. 157, 173, 935 A.2d 699, 709 (2007)).

 In determining whether the statute is clear or ambiguous, "[w]hen the statute is part of a larger statutory scheme, it is axiomatic that the language of a provision is not interpreted in isolation; rather, we analyze the statutory scheme as a whole considering the 'purpose, aim, or policy of the enacting body.'" *Anderson v. Council of Unit Owners of Gables on Tuckerman Condo.*, 404 Md. 560, 572, 948 A.2d 11, 19 (2008) (quoting *Serio v. Baltimore Cnty.*, 384 Md. 373, 390, 863 A.2d 952, 962 (2004); *Drew v. First Guar. Mortgage Corp.*, 379 Md. 318, 327, 842 A.2d 1, 6 (2003)). Moreover, we interpret statutes within a statutory scheme with reference to one another even if the statutes were enacted at different times and do not refer to each other. *Gov't Employees Ins. Co. & GEICO v. Ins. Com'r*, 332 Md. 124, 132, 630 A.2d 713, 717 (1993). We attempt, in that regard, to harmonize the statutes with each other and within the scheme without rendering any language or portion of the statutes meaningless, surplusage, superfluous, or nugatory. *Id.*

Section 9–629 is, when viewed in isolation, clear enough. There is nothing in the statute that prohibits the combining of awards, scheduled and for "other cases," to justify an award at the compensation level it prescribes. Ambiguity as to whether

compensation awards may be combined surfaces only when § 9–629 is compared with § 9–630, which governs compensation for the most serious permanent partial disabilities. That section expressly authorizes the Commission to combine awards resulting from a single accident in order to bring a claimant within its terms, entitling the claimant to enhanced benefits. It also contains a prohibition against combining permanent partial disability awards for scheduled injuries and injuries arising under "other cases" with those for disfigurement or mutilation, which are compensated separately pursuant to § 9–627(i).

■ It is a settled principle of Maryland law that the General Assembly is presumed to be aware of legislation it has enacted, *Ali v. CIT Tech. Fin. Services, Inc.*, 416 Md. 249, 264, 6 A.3d 890, 898–99 (2010), *Md. State Highway Admin. v. Kim*, 353 Md. 313, 324, 726 A.2d 238, 244 (1999) (citing *Gov't Employees Ins. Co. v. Insurance Comm'r*, 332 Md. 124, 132, 630 A.2d 713, 717 (1993)), as well as the interpretation the courts have given that legislation. *Williams v. State*, 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981); *Jones v. State*, 362 Md. 331, 337–38, 765 A.2d 127, 131 (2001); *Hoile v. State*, 404 Md. 591, 628, 948 A.2d 30, 52 (2008). Both the petitioners and the respondents embrace this principle and incorporate it into their arguments.

Relying on this principle, the petitioners proffer that the General Assembly must have been aware of our *Barnes* decision, which proscribed combining awards for scheduled members and "other cases" in order to render a claimant eligible for enhanced benefits, as well as of the subsequent statutory changes it enacted in 1970 to overrule *Barnes*. In that regard, they point out and emphasize that when the General Assembly enacted the legislation in 1987 to establish a third, intermediate level of compensation for injuries rendering a claimant permanently partially disabled, it did not include in the new section, then § 36(3)(a)(ii), the post-*Barnes* "combination language," while retaining that language in the section governing the highest level of compensation,

§ 36(3)(a)(iii). This, according to the petitioners, supports the inference, which is the real thrust of their argument, that the General Assembly intended that combining awards applied only to enhance compensation for the most serious permanent partial disabilities. They argue that, if combining awards is permitted under both §§ 9–629 and 9–630, then the "combination language" included in § 9–630 would be mere surplusage.

Adopting the same principle, the respondents emphasize, not the language of § 9–630, but the "broad plain meaning" of § 9–629, the timing of its enactment and *Barnes'* relevance to its provisions. They explain:

"When the predecessor to § 9–629 was enacted almost 20 years [after *Barnes*], there was no case that needed to be specifically overturned. In addition, the legislature had the benefit of the *Barnes* case to guide it. *Barnes* made it clear that a single enactment, with no separate provision for awarding heightened benefits for 'scheduled' versus 'unscheduled' losses would be interpreted as allowing for a combination of 'scheduled' and 'unscheduled' losses. With that in mind, the legislature enacted the predecessor to § 9–629, which had a single broad provision and standard for awarding 'second tier' benefits-simply an award of 75 weeks of compensation or more, with no mention of 'scheduled' versus 'unscheduled' losses."

(Citation omitted). Significant to the respondents' position is that § 9–629 was enacted with broad language and without there having been separate subsections addressing "scheduled" losses and "unscheduled" losses. Thus, they submit, "no ambiguity would be created by combining compensation awarded for a 'scheduled' loss with that awarded for an 'unscheduled loss.'"

To be sure, the petitioners' interpretation of § 9–629 as not permitting the combining of awards to make a claimant eligible for the enhanced benefits it provides does give effect to the "or a combination of awards" language in § 9–630 and avoids its being mere surplusage. On the other hand, it does not make the intent of the General Assembly in enacting § 9–629

in the form that it did clear, or stated differently, account for the apparent conflict between it and § 9–630. Moreover, their interpretation does not give effect to the remedial nature and purpose of the Workers' Compensation Act.

*Barnes,* as the respondents point out, did not announce a general rule regarding the combining of awards for scheduled and unscheduled losses. *Barnes,* 249 Md. at 562, 241 A.2d at 395. It simply interpreted the statutes pursuant to which the Commission acted contrary to the way in which the Commission did. *Id.* Nevertheless, *Barnes* is instructive with regard to the proper disposition of this appeal.[12] As we have seen, where the General Assembly enacted two separate statutes with different qualification requirements, one of which provided for and defined serious disability in terms of scheduled injuries to the body, and the other in terms of unscheduled injuries arising under "other cases," the Court determined that combining awards made under those statutes to enhance the benefits payable under both was neither the meaning of the statutes nor the intent of the Legislature. *Id.* That conclusion was dictated by the fact that the General Assembly enacted different categories of serious disability for the scheduled injuries and for the "other cases" injuries, rather than creating one category to cover both kinds of injuries. *Id.*

Before reaching that conclusion, the Court considered and rejected the argument made by the claimant that the statutes, as part of a remedial Act, were ambiguous and, thus, created uncertainty in the law and doubt as to the General Assembly's intention in passing the legislation, which entitled the claimant to the benefit of its liberal construction. *Barnes,* 249 Md. at 561, 241 A.2d at 395. That argument was rejected not because it was an incorrect statement or interpretation of the law, but because the Court concluded that it did not apply under the facts and circumstances of that case. *Id.* Indeed, we said:

---

12. The respondents profess not to see the relevance of the *Barnes* decision given the differences in the statutes interpreted in that case and the statute at issue here.

"It is true, as the claimant maintains, that where there is ambiguity in the compensation law, the uncertainty should be resolved in favor of the claimant, but that rule does not apply where, as here, there is no conflict and the intent of the legislature is clear."

*Barnes*, 249 Md. at 561, 241 A.2d at 395.

When the General Assembly amended § 36 to provide that a single category of serious disability, which applied to enhance awards for both scheduled and unscheduled injuries and expressly authorized the awards for both categories of loss, it directly addressed and resolved the issue favorable to claimants. That it later again amended § 36 to include another level of compensation, now codified in § 9–629, without including the same or similar language concerning the combining of awards, as was included in § 9–630, does not conclusively establish that it was the General Assembly's intent to prohibit the combining of awards for scheduled and unscheduled losses for the newly enacted level of compensation. This is especially so because to interpret § 9–629 as prohibiting the combining of awards when such combination is expressly sanctioned in § 9–630 would lead to strange, unfair, and, therefore, illogical results. The example the respondents proffer is illustrative and persuasive:

"A worker with multiple injuries, none individually resulting in compensation greater than 74 weeks could reach serious disability [pursuant to § 9–630] if the total compensation for the injuries was at least 250 weeks but, under the County's interpretation, if the total compensation was 249 weeks the worker's compensation would be reduced all the way to the "first tier" rate because no injury, individually, resulted in compensation greater than 74 weeks."

Moreover, as the respondents point out, the language of the subsection applicable to the "intermediate" level of compensation is quite broad and does not delineate or characterize, in terms of their being scheduled or unscheduled, the injuries that would qualify the claimant for that level of compensation.

Further, the General Assembly's intent is not clarified, never mind established beyond doubt, by reference to the legislative history of Acts of 1987, ch. 591. As the Court of Special Appeals pointed out, the reinsertion, in § 36(a)(iii), of the language regarding the combining of awards could have had as much to do with the prohibition it mandated with respect to using an award for disfigurement or mutilation to enhance the benefits for serious disability as with any attempt to prohibit the combining of awards for scheduled and unscheduled losses in determining an award pursuant to § 9–629. That prohibition is contained in § 9–630 immediately after the language permitting the combining of awards, but it is expressly not contained in § 9–629.[13]

■ The purpose of the Workers' Compensation Act was set out in the Preamble to Acts 1914, ch. 800, which enacted its predecessor. We have stated that purpose as being "to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment," *Howard County Ass'n, Retard. Cit. v. Walls*, 288 Md. 526, 531, 418 A.2d 1210, 1214 (1980), and "to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured workmen and their dependents, when under the law as it previously existed, such workmen could not recover damages for their injuries." *Paul v. Glidden Co.*, 184 Md. 114, 119, 39 A.2d 544, 546 (1944). *See also Victor v. Proctor & Gamble Mfg. Co.*, 318 Md. 624, 628–29, 569 A.2d 697, 699–700 (1990); *Unsatisfied Claim and Judgment Fund Bd. v. Salvo*, 231 Md. 262, 264, 189 A.2d 638, 639 (1963); *Egeberg v. Md. Steel Prods. Co.*, 190 Md. 374, 379, 58 A.2d 684, 685 (1948). Consistent with this purpose, we have repeatedly emphasized the Act's remedial nature and that it "should be

---

**13.** We do not decide whether by parity of reasoning from the result we reach in this case, this proscription against combining a permanent partial injury award (scheduled or unscheduled) with an award for disfigurement or mutilation, also applies to § 9–629. The matter is not now before the Court and we need not address it at this time.

construed as liberally in favor of the injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Howard County Ass'n Retard. Cit. v. Walls*, 288 Md. at 530, 418 A.2d at 1213. *See Design Kitchen & Baths v. Lagos*, 388 Md. 718, 724, 882 A.2d 817, 821 (2005); *Harris v. Board of Education of Howard County*, 375 Md. 21, 57, 825 A.2d 365, 387 (2003); *Podgurski v. OneBeacon Ins. Co.*, 374 Md. 133, 142, 821 A.2d 400, 406 (2003); *Mayor & City Council of Baltimore v. Cassidy*, 338 Md. 88, 97, 656 A.2d 757, 761–62 (1995); *Lovellette v. Mayor & City Council of Baltimore*, 297 Md. 271, 282, 465 A.2d 1141, 1147 (1983); *See also Barnes*, 249 Md. 557, 241 A.2d 392. Thus, we do not apply the canon of construction that a statute in derogation of the common law should be strictly construed. *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 474–75, 784 A.2d 569, 573–74 (2001); *Philip Elecs.*, 348 Md. at 216–17, 703 A.2d at 153–54. *See Porter v. Bayliner Marine Corp.*, 349 Md. 609, 616, 709 A.2d 1205, 1208 (1998); *B. Frank Joy Co. v. Isaac*, 333 Md. 628, 634–35, 636 A.2d 1016, 1019 (1994). Section 9–102, relating to the construction of the Act, is consistent, providing:

"(a) In general.—This title shall be construed to carry out its general purpose.

"(b) Rule for strict construction inapplicable.—The rule that a statute in derogation of the common law is to be strictly construed does not apply to this title."

The petitioners' interpretation of § 9–629 undercuts the remedial nature of the Act. *See, e.g., Design Kitchen & Baths v. Lagos*, 388 Md. 718, 724, 882 A.2d 817, 821 (2005) (holding that an undocumented alien is a covered employee under the Act even though the statutory scheme makes no reference to an undocumented alien being a covered employee). Giving effect to the remedial nature of the Workers' Compensation Act and applying the *Design Kitchen* logic to the cases sub *judice* requires us to hold that § 9–629 allows awards for scheduled and unscheduled losses to be combined. Such a holding harmonizes that statute and § 9–630 within the larger statutory scheme by providing that the combination of permanent partial injury awards is appropriate in all cases.

Accordingly, we affirm the judgment of the Court of Special Appeals.

JUDGMENT AFFIRMED, WITH COSTS.