*Ashley N. Downer v. Baltimore County, Maryland*
Case No. 2498 September Term, 2017

**WORKERS' COMPENSATION ACT – PERMANENT PARTIAL DISABILITY – ENHANCED BENEFIT FOR "PUBLIC SAFETY EMPLOYEES" – "PARAMEDIC," AS COMMONLY USED WHEN STATUTE WAS ENACTED IN 1987, INCLUDED AN EMERGENCY MEDICAL TECHNICIAN.** The Maryland Workers' Compensation Act provides that a "public safety employee" who is injured and sustains a permanent partial disability compensable by less than 75 weeks of compensation is entitled to be paid benefits at an enhanced rate pursuant to Maryland Code (1991, 2016 Repl. Vol.), Labor and Employment Article ("LE"), § 9-628(h). When the term "public safety employee" was defined in 1987 in the section that is now LE § 9-628(a)(1), the definition provided (as it does still): "In this section, 'public safety employee' means: (1) a firefighter, fire fighting instructor, or paramedic employed by . . . (ii) a county; . . . ." No statutory definition was provided for "paramedic," but the word was commonly understood at the time to describe a person who is trained to provide emergency medical treatment. The Court concludes that the term "paramedic" was used by the legislature in accordance with its commonly understood meaning, and includes persons who are also known as emergency medical technicians.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2498

September Term, 2017

_____

ASHLEY N. DOWNER

v.

BALTIMORE COUNTY, MARYLAND

_____

Meredith,
Graeff,
Berger,

JJ.

_____

Opinion by Meredith, J.

_____

Filed: August 26, 2020

*Judge Steven Gould did not participate in the Court's decision to designate this opinion for publication pursuant to Maryland Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case concerns statutory construction of a provision of the Maryland Workers' Compensation Act that permits a "public safety employee" who is injured and sustains a permanent partial disability to be paid benefits at an enhanced rate, Maryland Code (1991, 2016 Repl. Vol.), Labor and Employment Article ("LE"), § 9-628(h). On September 27, 2016, Ashley Downer, appellant, was employed as an emergency medical technician ("EMT") for the Baltimore County Fire Department (the "County"), appellee. While lifting a heavy bag of equipment at work, Ms. Downer suffered an injury to her neck, which resulted in a permanent partial disability, for which the Workers' Compensation Commission awarded her 45 weeks of compensation "[u]nder 'Other Cases' amounting to 9% industrial loss of use of the body as the result of an injury to the neck."

As a general rule, an injured worker who is awarded "less than 75 weeks" of benefits is paid "compensation that equals one-third of the average weekly wage of the covered employee." LE § 9-628(f). But Ms. Downer urged the Commission to award her the enhanced benefit available to public safety employees pursuant to LE § 9-628(h). Section 9-628(h) provides that a "public safety employee" who is awarded compensation for less than 75 weeks will be compensated at the rate that is normally paid to injured workers who are awarded 75 to 249 weeks of benefits (pursuant to LE § 9-629), *i.e.*, "compensation that equals two-thirds of the average weekly wage of the covered employee," in other words, double the amount of compensation normally paid when an injured employee is awarded less than 75 weeks of compensation. The Commission denied Ms. Downer's request to be compensated as a public safety employee, and the

Circuit Court for Baltimore County granted the County's motion for summary judgment, affirming the Commission's ruling.

In this appeal, as in the circuit court, the sole disputed issue is whether Ms. Downer meets the statutory definition of "public safety employee" set forth in LE § 9-628(a), which reads:

> (a) **In this section, "public safety employee" means**:
>
> > (1) **a firefighter, fire fighting instructor, or paramedic employed by:**
> >
> > > (i) a municipal corporation;
> > >
> > > (ii) **a county;**
> > >
> > > (iii) the State;
> > >
> > > (iv) the State Airport Authority; or
> > >
> > > (v) a fire control district; [or]
> >
> > (2) **a volunteer firefighter or volunteer ambulance, rescue, or advanced life support worker who is a covered employee under § 9-234 of this title and who provides volunteer fire or rescue services to:**
> >
> > > (i) a municipal corporation;
> > >
> > > (ii) **a county;**
> > >
> > > (iii) the State;
> > >
> > > (iv) the State Airport Authority; or
> > >
> > > (v) a fire control district;
> >
> > (3) a police officer employed by:
> >
> > > (i) a municipal corporation;

2

(ii) a county;

(iii) the State;

(iv) the State Airport Authority;

(v) the Maryland-National Capital Park and Planning Commission; or

(vi) the Washington Metropolitan Area Transit Authority;

(4) a Prince George's County deputy sheriff or correctional officer;

(5) a Montgomery County deputy sheriff or correctional officer;

(6) an Allegany County deputy sheriff;

(7) a Howard County deputy sheriff;

(8) an Anne Arundel County deputy sheriff or detention officer; or

(9) a Baltimore County deputy sheriff, but only when the deputy sheriff sustains an accidental personal injury that arises out of and in the course and scope of performing duties directly related to:

(i) courthouse security;

(ii) prisoner transportation;

(iii) service of warrants;

(iv) personnel management; or

(v) other administrative duties.[1]

---

[1] Since 2016, two additional groups have been added to the list of employees included in the definition of "public safety employee" in LE § 9-628(a). Effective October 1, 2018, subsection (10) was added to cover "a State correctional officer"; and effective October 1, 2019, subsection (11) was added to cover "a Baltimore City deputy sheriff."

(Emphasis added.)

Ms. Downer contends that "the daily activities and nature of work of an EMT are significantly similar to that of a paramedic," and she should be considered a "public safety employee" under LE § 9-628(a). The County responds by asserting that the statutory definition does not cover *paid* EMT employees, although the County concedes in its brief that the definition of "public safety employee" includes "volunteer ambulance, rescue, or advanced life support worker[s]" who provide volunteer "rescue services." Despite the clear inclusion of those similar volunteer emergency medical positions within the definition in LE § 9-628(a), the County maintains: "At no time has the General Assembly seen fit to add paid EMT employees to those public safety employees included in LE § 9-628."

We note, however, that the Workers' Compensation Act included no statutory definition of the term "paramedic" when the General Assembly adopted Md. Code (1957, 1985 Repl. Vol., 1987 Supp.), Art. 101, § 67(16)—the predecessor of LE § 9-628(a)—in 1987 and included firefighters and paramedics in the definition of public safety employees eligible for the enhanced compensation rate pursuant to Art. 101, § 36(3)(i)(3.), the predecessor to LE § 9-628(h). In the absence of a statutory definition of "paramedic," we are called upon to determine the intent of the General Assembly when it used the word "paramedic" in 1987 in the definition of "public safety employee" in this section of the Act. *See* 1987 Laws of Maryland 2681, Ch. 591 (H.B. 239).

4

The Court of Appeals provided the following guidance on the interpretation of the

Workers' Compensation Act in *Johnson v. Mayor and City Council of Baltimore*, 430

Md. 368, 376-378 (2013):

> Section 9–745 governs appeals of decisions by the Workers'
> Compensation Commission. The Commission's decision "is presumed to
> be prima facie correct," § 9–745(b)(1), but "this presumption does not
> extend to questions of law, which we review independently." *Montgomery
> County v. Deibler*, 423 Md. 54, 60, 31 A.3d 191 (2011) (citing *Wal Mart
> Stores, Inc. v. Holmes*, 416 Md. 346, 357, 7 A.3d 13 (2010)). This appeal is
> from the Circuit Court's grant of summary judgment in favor of the City.
> "When reviewing a grant of summary judgment, we must make the
> threshold determination as to whether a genuine dispute of material fact
> exists, and only where such dispute is absent will we proceed to review
> determinations of law." *Stachowski v. Sysco Food Servs. of Baltimore, Inc.*,
> 402 Md. 506, 515–516, 937 A.2d 195 (2007) (quoting *Remsburg v.
> Montgomery*, 376 Md. 568, 579, 831 A.2d 18 (2003)). The parties agree on
> the facts, leaving the interpretation of § 9–503(e) as the sole legal issue
> before us. "The standard of review of a trial court's grant of a motion for
> summary judgment on the law is de novo, that is, whether the trial court's
> legal conclusions were legally correct." *D'Aoust v. Diamond*, 424 Md. 549,
> 574, 36 A.3d 941 (2012) (quoting *Messing v. Bank of Am., N.A.*, 373 Md.
> 672, 684, 821 A.2d 22 (2003)); *see also Uninsured Employers' Fund v.
> Danner*, 388 Md. 649, 658–59, 882 A.2d 271 (2005) (citing *Johnson v.
> Mayor and City Council of Baltimore*, 387 Md. 1, 5–6, 874 A.2d 439
> (2005)) (noting that "the standard of review in a workers' compensation
> claim disposed of at summary judgment by the Circuit Court is *de novo* ").
>
> The purpose and design of the [Workers' Compensation] Act factor
> into our interpretation of its provisions. As part of our review, "we
> recognize that the Act is a remedial statute." *Deibler*, 423 Md. at 61, 31
> A.3d 191 (citing *Design Kitchen & Baths v. Lagos*, 388 Md. 718, 724, 882
> A.2d 817 (2005)). "The purpose of the Act is 'to protect workers and their
> families from hardships inflicted by work-related injuries by providing
> workers with compensation for loss of earning capacity resulting from
> accidental injury arising out of and in the course of employment.'" *Id.*
> (quoting *Howard County Assoc. for Retarded Citizens, Inc. v. Walls*, 288
> Md. 526, 531, 418 A.2d 1210 (1980)). "Therefore, we have been consistent
> in holding that the Act must be 'construed as liberally in favor of injured
> employees as its provisions will permit in order to effectuate its benevolent
> purposes.'" *Id.* (quoting *Lagos*, 388 Md. at 724, 882 A.2d 817).

Our approach follows the general principles of statutory interpretation. "First, if the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end." *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 473, 784 A.2d 569 (2001) (citing *Marriott Employees v. Motor Vehicle Admin.*, 346 Md. 437, 445, 697 A.2d 455 (1997)). "Second, when the meaning of the plain language is ambiguous or unclear, we seek to discern the intent of the legislature from surrounding circumstances, such as legislative history, prior case law, and the purposes upon which the statutory framework was based." *Id.* (citing *DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 437, 677 A.2d 73 (1996)). "Last, applying a canon of construction specific to the [Workers' Compensation] Act, if the intent of the legislature is ambiguous or remains unclear, we resolve any uncertainty in favor of the claimant." *Id.* (citing *Baltimore v. Cassidy*, 338 Md. 88, 97, 656 A.2d 757 (1995)). "This Court, however, may not stifle the plain meaning of the Act, or exceed its purposes, so that the injured worker may prevail." *Id.* (citing *Morris v. Bd. of Educ.*, 339 Md. 374, 384, 663 A.2d 578 (1995)).

(Footnote omitted.)

When we are considering the meaning of a term that is not defined in a statute, we often "turn to a dictionary that is contemporaneous with the drafting and enacting of the language in the statute." *Lowery v. State*, 430 Md. 477, 491 (2013). *Accord Hayden v. Maryland Department of Natural Resources*, 242 Md. App. 505, 524-25 (2019). "Although dictionary definitions do not provide dispositive resolutions of the meaning of statutory terms, dictionaries . . . do provide a useful starting point for determining what statutory terms mean, at least in the abstract, by suggesting what the legislature could have meant by using particular terms." *Marriott Employees Federal Credit Union v. Motor Vehicle Admin.* 346 Md. 437, 447 (1997) (citations and internal quotation marks omitted).

Baltimore County currently maintains detailed job descriptions that clearly differentiate between a paramedic and an emergency medical technician, but the common dictionary definition of "paramedic" in 1987 would have aptly described Ms. Downer's job. In 1987, the term "paramedic" was defined in a generally available dictionary as "a person who is trained to assist a physician or to give first aid or other health care in the absence of a physician, often as part of a police, rescue, or firefighting squad." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1408 (2d ed. 1987). A similar definition of "paramedic" appears in both THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1275 (4th ed. 2000), and THE AMERICAN HERITAGE COLLEGE DICTIONARY 990 (3d ed. 1993, rev. 2000): "A person who is trained to give emergency medical treatment or assist medical professionals." THE OXFORD ENGLISH DICTIONARY (2d ed. 1989) provides two definitions in Volume XI at 198: (1) "A person trained to be dropped by parachute to give medical aid." (2) "A paramedical worker." The term "paramedical" is then defined as: "Supplementary to or supporting the work of medically qualified personnel." *Id.* A more recently published dictionary that appeared in 2001— MICROSOFT ENCARTA COLLEGE DICTIONARY 1054 (2001), self-proclaimed to be "The First Dictionary for the Internet Age"—gave a similar definition of "paramedic": "somebody trained to perform emergency medical procedures in the absence of a doctor, especially a member of an ambulance crew."

In view of the common dictionary definitions for the term "paramedic" that would have been available to legislators in 1987, and the lack of a statutory definition of that term in LE § 9-628(a)—or elsewhere in the Workers' Compensation Act—we perceive

7

no sound reason to conclude that, when the General Assembly included paramedics in the definition of "public safety employee[s]" in 1987, there was an intent to *exclude* employees who provide the health care services that an emergency medical technician like Ms. Downer provides in the course of her employment for the Baltimore County Fire Department. As Chief Judge Barbera noted when writing for the Court of Appeals in *Johnson*, 430 Md. at 377-78, "if the intent of the legislature is ambiguous or remains unclear, we resolve any uncertainty in favor of the claimant."

And we find nothing in the Maryland Code as of 1987 that persuades us that the manner in which the General Assembly used the term paramedic in the statute that is now LE § 9-628(a) was intended to exclude emergency medical technicians from the definition of public safety employee. As far as we can determine, the term "paramedic" did not appear anywhere else in the Labor and Employment Article when that volume of the Maryland Code first appeared as recodified in 1991 pursuant to H.B. 1. *See* 1991 Laws of Maryland 248, Ch. 8 (H.B.1). Although that volume included a number of references to "ambulance," we discern no reference to either EMT, E.M.T., or "emergency medical technician."

Looking elsewhere in the Maryland Code as of 1987, we find the word paramedic in the 1986 Replacement Volume of the Health Occupations Article ("HO"), in § 14-303.2. That section, added pursuant to 1983 Laws of Maryland, Ch. 125 (S.B. 403), recognized a new category of health care providers who were exempt from the licensing requirements applicable to physicians. These individuals would be known as "emergency medical technician-paramedics" upon completion of certain courses and tests. The

preamble to Ch. 125 recited that "[s]everal educational institutions and local jurisdictions have initiated programs to train personnel to the EMT/P level," and "[d]evelopment of and participation in EMT/P programs will be totally voluntary." The same year that the General Assembly recognized "emergency medical technician-paramedic[s]" in HO § 14-303.2, the General Assembly also amended Section 5-309(b)(2)(iii) of the Courts and Judicial Proceedings Article ("CJ") to add "emergency medical technician-paramedic[s]" to those members of a county ambulance or rescue squad who were given immunity under Maryland's Good Samaritan Act. *See* 1983 Laws of Maryland 934-36, Ch. 248 (H.B. 851).

In our view, the fact that the 1987 legislature did not either cross-reference HO § 14-303.2 in LE § 9-628(a) or utilize wording that tracked the terminology that existed in HO § 14-303.2 to describe a specific category of paramedics supports our conclusion that the General Assembly was using a generic definition of "paramedic" in LE § 9-628 that included public safety employees who perform emergency medical services like those performed by Ms. Downer in her position as an EMT for the Baltimore County Fire Department. To the extent the legislature's use of the term "emergency medical technician-paramedic" in HO § 14-303.2 and CJ § 5-309(b)(2)(iii) could be viewed alternatively as supporting the County's position, we apply the rule mentioned in *Johnson,* 430 Md. at 377-78, and resolve the uncertainty in favor of the employee.

We also found references to emergency medical technicians in the 1985 Replacement Volume of the Education Article, §§ 13-110 and 13-111, which include references to "emergency medical services" and "training for rescue personnel and

9

emergency medical technicians." Again, however, we found nothing in the pre-1987 version of the Education Article that leads us to conclude that, when the legislature used the word "paramedic" in LE § 9-628(a), there was an intent on the part of the General Assembly to exclude emergency medical technicians from that section's definition of "public safety employee."

Interpreting LE § 9-628(a) to include paid employees who perform emergency medical technician services within the category of public safety employees who were described as paramedics in 1987 is also consistent with the rules of statutory construction that seek to avoid an illogical or absurd result. *See, e.g.*, *Carlos Couret-Rios v. Fire & Police Employees' Retirement System of The City of Baltimore*, 468 Md. 508, 528 (2020) ("we avoid constructions that are illogical or nonsensical" (citations and internal quotation marks omitted)); *Breck v. Maryland State Police*, 452 Md. 229, 248 (2017) ("This absurd result cannot be what the legislature intended. In our task of statutory interpretation, we avoid any construction of a statute that would lead to 'illogical, absurd, or anomalous results.' *Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 122, 90 A.3d 464 (2014)."); *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75 (1986) ("the court, in seeking to ascertain legislative intent, may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense" (citations omitted)).

Two years after the General Assembly adopted Art. 101, § 67(16)—the predecessor of LE § 9-628(a)—and included "paramedic" employees in the definition of

10

"public safety employee," this section of the Workers' Compensation Act was amended to add "a volunteer fire fighter or volunteer ambulance rescue personnel providing volunteer fire or rescue services to . . . [a] county" to the definition. 1989 Laws of Maryland 3573, Ch. 578 (S.B. 430), now part of LE § 9-628(a)(2). The following year, the definition of public safety employee was amended again by inserting in the phrase that had been added in 1989 "or advanced life support" personnel. 1990 Laws of Maryland 1832, Ch. 438 (S.B. 219). (At that point, the statutory definition of public safety employee did not include any of the categories of employees that are currently enumerated in LE § 9-628(a) subsections (4) through (11).)

The County acknowledges that the definition of "public safety employee[s]" who are eligible for the enhanced disability benefit sought by Ms. Downer now includes volunteer ambulance and rescue personnel, and volunteer advanced life support personnel. But, because Ms. Downer was serving as an employee of the Fire Department rather than a volunteer when she was injured, the County maintains that the statute denies her the enhanced benefit.

Were we to adopt the County's interpretation, the legal effect would be to treat Baltimore County's paid EMTs less favorably under LE § 9-628(h) than emergency medical technicians who volunteer and perform similar work under similar circumstances. Because the purpose of the Workers' Compensation Act "is to protect workers and their families from hardships inflicted by work-related injuries by providing workers with compensation for loss of earning capacity resulting from accidental injury arising out of and in the course of employment," *Deibler*, 423 Md. at 61 (internal citation

11

and quotation marks omitted), it would be illogical, if not absurd, for the legislature to have treated volunteers more advantageously in the Workers' Compensation Act than paid EMTs who are injured while performing the same emergency services. But, on the other hand, it would have been rational for the legislature to add volunteer providers of emergency medical services to the definition in 1989 and 1990 if paid emergency medical technicians were already covered by the 1987 definition that included paramedic employees.

It is true that, under Baltimore County's personnel system as currently structured, paramedics are required to have a higher level of training than EMTs, but both positions are primarily concerned with public safety in hazardous circumstances, and both respond to the same emergencies. The Baltimore County website currently states: "Baltimore County firefighters and emergency medical technicians respond to more than 138,000 incidents annually. About 75 percent of those incidents are medical calls." The website further states: "Residents of Baltimore County enjoy a state-of-the-art emergency medical and trauma care system. This system features: . . . Emergency medical technicians and paramedics on all medic units . . . ." https://www.baltimorecountymd.gov/Agencies/fire/overview.html (last visited 8/17/20) Employees holding both positions respond to emergencies, provide emergency medical care, and face similar stress in their employment. Ms. Downer, as a paid EMT employed by the Baltimore County Fire Department, is subject to the same types of unusual hazards, stresses, and strains in her daily work as Baltimore County's paid paramedics.

We conclude that Ms. Downer should have been considered a public safety employee within the definition of LE § 9-628(a)(1).

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTIONS TO VACATE THE AWARD OF THE WORKERS' COMPENSATION COMMISSION THAT HELD THAT APPELLANT IS NOT A PUBLIC SAFETY EMPLOYEE AS DEFINED IN LABOR AND EMPLOYMENT ARTICLE § 9-628(a), AND THE CIRCUIT COURT SHALL ORDER THE COMMISSION TO ENTER AN AWARD CONSISTENT WITH THIS OPINION.**
**COSTS TO BE PAID BY APPELLEE.**